980 So.2d 214 (2008)
SUCCESSION OF Thelma Lee Braswell LAWLER.
No. 42,940-CA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 2008.
Rehearing Denied April 24, 2008.
*215 Frederick B. King, Monroe, for Appellant, Catherine Ann Braswell Kornegay, Appellees, James Ray Braswell, Randy Keith Braswell, Stephan Grant Braswell, Larry Herman Braswell, Terry Braswell.
Willie Hunter, Jr., Daniel J. Hunter, for Appellees, Michael Shane Killen, Janice K. Killen.
Carol L. Tubb, for Appellee, Succession of Thelma Lee Braswell Lawler.
Before WILLIAMS, CARAWAY and PEATROSS, JJ.
WILLIAMS, J.
The petitioner, Catherine Braswell Kornegay, appeals a judgment dismissing her petition to annul the notarial will of the decedent, Thelma Braswell Lawler. The court found that the will was valid under LSA-C.C. art. 1577 and ordered Kornegay, the provisional administratrix, to submit a comprehensive accounting of her administration of the decedent's estate. For the following reasons, we affirm.

FACTS
In the 1940's, Thelma Braswell Lawler and Whit Lawler were married and lived in Monroe, Louisiana. They did not have any children and Whit Lawler died in 1988. During the marriage, Thelma and her husband acquired several parcels of rental property and she operated a beauty shop out of her home. In 2003, Thelma hired Priscilla Farmer to assist her with balancing her check book, paying monthly bills and preparing income tax returns. According to Farmer, Thelma had difficulty reading the numbers on her bank statements without a magnifying glass.
On June 28, 2006, while in St. Francis Medical Center for a surgical procedure, Thelma wanted to prepare a will. Her friend contacted attorney Patrick Wright on her behalf. Wright's secretary, Cheryl Crowell, met with Thelma to discuss her estate and then drafted a notarial will and an Onerous Donation of real property, which was located in West Monroe. That same day, attorney Wright, Crowell and Cory Wright visited Thelma in her hospital room, where she executed the will and donation. Attorney Wright, who had not previously met Thelma, stated in a deposition that she read the will silently, indicated that the will reflected her wishes and then signed the documents.
The decedent died on September 12, 2006. Decedent's will was probated on September 21, 2006. The will granted several bank accounts and three parcels of real property to Michael Killen and Janice Killen, who were described as the decedent's "dear friends." In addition, the will included bequests to decedent's favorite charity, her cousin and two other friends. Michael Killen was named executor of decedent's estate. The decedent's other relatives did not receive any specific legacy or benefit under the will.
In October 2006, a petition to annul the will was filed by decedent's heirs, including Catherine Braswell Kornegay, Randy Braswell, Stephen Braswell, Larry Braswell, Terry Braswell and James Braswell. The named defendants were those who benefited under the will. The petition alleged that decedent's eyesight was impaired and that the will was invalid because it did not comply with LSA-C.C. art. 1579, the notarial format for the visually *216 impaired. In addition, the petition showed that Michael Killen was a convicted felon and ineligible to serve as executor. The court removed Killen and appointed decedent's niece, Catherine Braswell Kornegay, as provisional administratrix of the succession. The court appointed attorney Lynn Tubb to represent the nonresident legatees under the will.
After a trial, the court, noting the lack of medical evidence showing that decedent was visually impaired, found that the petitioners had failed to prove that decedent was physically unable to read her will and concluded that the requirements of Article 1579 were not applicable. The court rendered judgment upholding the decedent's will as valid under LSA-C.C. art. 1577, ordering Kornegay to submit an accounting of her actions as provisional administratrix, requiring that another person be proposed to serve as executor to disburse the legacies as provided by the will, and dismissing the petition to annul. The petitioner, Kornegay, filed a motion for new trial, which was denied. Subsequently, the court appointed attorney Tubb as executor of decedent's estate. The petitioner appeals the judgment.

DISCUSSION
The petitioner contends the trial court erred in declining to annul the decedent's will. Petitioner argues that the will is invalid because the notary did not follow the procedure required for a notarial testament when the testator is physically impaired and cannot read the document.
All persons have capacity to give and receive donations inter vivos and mortis causa, except as provided by law. LSA-C.C. art. 1470. There is a presumption in favor of testamentary capacity. A challenge to a testator's capacity requires proof of incapacity by clear and convincing evidence. Succession of Lyons, 452 So.2d 1161 (La.1984); Succession of Boisseau, 33,861 (La.App. 2d Cir.9/27/00), 768 So.2d 743, writ denied, 00-2993 (La. 12/15/00), 777 So.2d 1233.
LSA-C.C. art. 1577 requires that a testator be physically able to read at the time the notarial testament is executed. Succession of Boisseau, supra. A testator physically impaired to the extent that she cannot read may execute a notarial will in accordance with LSA-C.C. art. 1579. The written testament must be read aloud in the presence of the testator, the notary and two competent witnesses. The testator must then signify that she heard the reading and that the instrument is her will. An attestation clause setting forth this reading and declaration must be executed. Boisseau, supra.
The testator's ability to read is an element of testamentary capacity. Whether a testator has the ability to read is a question of fact. Absent manifest error, the trial court's finding will not be overturned on appeal. Succession of Young, 03-1233 (La.App. 3rd Cir.3/3/04), 867 So.2d 139. A testator's ability to read is presumed and an opponent to the will must show that the testator was unable to read by clear and convincing evidence. Boisseau, supra.
In the present case, the issue is whether the decedent's vision was impaired to such an extent that she was physically unable to read. Verda Frost testified at trial that she stayed with decedent after her release from the hospital in August 2006 until her death in September 2006. Frost testified that decedent wore eyeglasses, but she could not read the labels on her medicine bottles. Frost stated that during her stay, she never saw decedent read her mail or the newspaper. However, Frost testified that the day after Labor Day 2006, the decedent wrote out *217 and signed a check to pay Frost for helping with decedent's care.
Priscilla Farmer, the decedent's bookkeeper, testified that although the decedent had difficulty reading the small print on the mailed bank statements, she kept a handwritten record of her checks on a pad of legal paper, listing the check number, the payee and the amount. A page of this ledger dated June 2006 was admitted into evidence. Farmer stated that decedent often obtained a computer printout of her checking account from the bank and noted on her ledger the items that had cleared. Farmer testified that on August 10, 2006, she wrote out the phone number of attorney Wright at the request of decedent, who said she wanted to get a copy of her will because she did not know what it said. Farmer stated that she had observed decedent use a magnifying glass when looking at her financial records and that she was able to discern the printed information in that manner.
Cheryl Crowell, attorney Wright's secretary, testified that she received a phone call in June 2006 from decedent's friend, who said that decedent wanted to make a will. Crowell stated that after speaking with the decedent on the telephone, she went to the hospital and took notes regarding the provisions decedent wanted in the will. Crowell explained that her notes and a prior draft of a will provided by decedent were used by attorney Wright in preparing the will. Crowell testified that Wright spoke with decedent on the telephone to confirm that the will contained the provisions she wanted. Crowell stated that she accompanied Wright and his son to decedent's hospital room, where Wright asked decedent to look over the will. Crowell testified that decedent wore eyeglasses as she silently read the will and that she indicated the will was correct.
Attorney Patrick Wright testified by deposition that after preparing the will he telephoned the decedent, read the complete will to her over the telephone and that she told him the provisions reflected her wishes. Wright stated that he later met decedent at the hospital and asked her to read the document. He estimated that decedent spent approximately three to four minutes reading the will and then said she was ready to sign.
Catherine Kornegay testified that in July 2006, she went to see decedent in the hospital and spent time with her after she returned home. Kornegay stated that she had last visited her aunt four years before. She testified that the decedent had difficulty reading the mail and books after returning home from the hospital. Kornegay stated she bought a big clock with large numbers because decedent could not tell the time using a small clock. Kornegay testified that she had seen the decedent use a magnifying glass to read documents. Kornegay acknowledged that on September 5, 2006, one week before decedent's death, the decedent had signed a medical release form and that she was able to write her social security number within the spaces provided.
Sandra Payne, another niece of decedent, testified that during the past few years she had sent decedent a plant for her birthday and that she needed someone to read the card for her. Payne stated that she had shown photos of her grandchildren to the decedent when she last visited her in December 2005, and that decedent was unable to tell if the children were boys or girls. Payne testified that she had seen decedent driving her own car in March or April 2006.
In her brief, the petitioner contends that at the time the will was executed, attorney Wright should have asked decedent if she could read the print used in the document *218 or asked her to read a portion of the will aloud to determine if she was able to read the words. However, Articles 1577 and 1579 concern the issue of whether the testator is physically able to read and do not require that the testator read the will at the time of signing. Article 1577, Revision Comment (f); Succession of Young, supra. The testimony and exhibits demonstrated that although the decedent may have used a magnifying glass, she was able to read and maintain a record of her checks written in June 2006, the month she signed the will.
Attorney Wright testified that the decedent spent several minutes reading through her will before saying she was ready to sign. In addition, the decedent did not express an inability to read the print used in the document and she signed in the proper places with no indication that she was shown where to place her signature. After reviewing the record, we cannot say the trial court was clearly wrong in finding that the attorney was not required to take additional steps to determine decedent's ability to read in executing the notarial will. The assignment of error lacks merit.
Evidentiary Issues
In two assignments of error, the petitioner contends the trial court erred in its assessment of the evidence. Petitioner argues that medical evidence of decedent's visual impairment was not necessary because there was other testimony describing her weak eyesight.
Contrary to the petitioner's assertion in her brief, a prima facie showing was not sufficient to satisfy her burden of proof in this case. As previously stated, a testator's ability to read is presumed and the will opponent must show by clear and convincing evidence that the testator was unable to read. Boisseau, supra. Although Frost and Kornegay testified that decedent could not read the labels on medicine bottles and she did not read the newspaper or the mail, their testimony concerned the decedent's abilities approximately two months after the will was signed and during the last month of her life. In contrast, Payne stated that she observed the decedent driving herself in April 2006 and Farmer testified that decedent was able to read small print with the aid of a magnifying glass.
Such conflicting testimony was not sufficient to establish by clear and convincing evidence that decedent was unable to read when she signed the will. In assessing whether the petitioner satisfied her burden of proof, the trial court did not err in considering the lack of medical evidence that decedent was visually impaired. Significantly, the petitioner does not dispute that decedent was able to read if the print was large enough or she used a magnifying glass. Based upon the evidence presented, we cannot say the trial court was clearly wrong in finding that the decedent was physically able to read at the time she executed her will. The assignment of error lacks merit.
Nor does the record support petitioner's contention that the trial court gave improper weight to the deposition testimony of attorney Wright. A trial court is granted wide discretion in assessing the probative value of evidence and is free to accept or reject, in whole or in part, the testimony of any witness. Duzon v. Stallworth, 01-1187 (La.App. 1st Cir.12/11/02), 866 So.2d 837, writs denied, 03-0589, 03-0605 (La.5/2/03), 842 So.2d 1101, 1110.
In its written ruling, the trial court expressly referred to several exhibits introduced into evidence and stated that the testimony of all of the witnesses had been reviewed in making a determination in this case. The parties agreed to admit attorney *219 Wright's deposition into evidence at trial in lieu of his live testimony. Based upon this record, we cannot say the trial court abused its discretion in weighing the testimony of the witnesses. Thus, the assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellant, Catherine Braswell Kornegay.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, PEATROSS, MOORE and LOLLEY, JJ.
Rehearing denied.