# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**14-234**

**LIVINGSTON C. GUIDRY, ET UX.**

**VERSUS**

**KYSHA LASHANE BERNARD, ET AL.**

\**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20110505
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

\**********

**ELIZABETH A. PICKETT
JUDGE**

\**********

**ON REHEARING**

\**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

Amy, J., dissents and assigns reasons.

**REVERSED AND RENDERED.**

**Thomas R. Hightower, Jr.**
**A Professional Law Corporation**
**Post Office Drawer 51288**
**Lafayette, LA   70505**
**(337) 233-0555**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Livingston Guidry**
      **Shelter Mutual Insurance Company**

**Glenn Armentor**
**J. Christian Lewis**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA   70501**
**(337) 233-1471**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Kysha Lashane Bernard**

**Nicholas Gachassin, Jr.**
**Gary Delahoussaye**
**Gachassin Law Firm**
**Post Office Box 80369**
**Lafayette, LA   70598-0369**
**(337) 235-4576**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
      **Livingston C. Guidry**
      **Phena Guidry**

**Michael J. Breaux**
**Post Office Box 51106**
**Lafayette, LA   70505-1106**
**(337) 235-8000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Shelter Mutual Insurance Company**
      **as Underinsured Motorist Carrier of Phena Guidry**

**Ian A. Macdonald**
**Jones and Walker**
**Post Office Drawer 3408**
**Lafayette, LA   70502-3408**
**(337) 262-9000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Louisiana Farm Bureau Casualty Insurance Company**

**PICKETT, Judge.**

We granted rehearing in this case to consider the propriety of our original opinion and conclusion therein on the issue of liability. Upon reconsideration, we conclude that we erred in our original opinion and reverse the trial court's determination that neither party carried their burden of proof. We further conclude that Ms. Bernard carried her burden of proving that Mr. Guidry caused the October 10, 2010 automobile accident and that she suffered injuries as a result of the accident. Accordingly, we render judgment in favor of Ms. Bernard.

*Liability*

As set forth in our original opinion, the Guidrys alleged that Mr. Guidry turned right on to Louisiana Avenue from Carmel Drive on a green light and that the accident occurred north of the intersection when Ms. Bernard changed lanes and collided with their vehicle. Ms. Bernard alleged, however, that immediately before the accident occurred, she was traveling in the far right lane of Louisiana Avenue and entered the intersection at Carmel Avenue on a green light, but Mr. Guidry failed to yield to her and turned in front of her onto Louisiana Avenue, causing their vehicles to collide.

In her application for rehearing, Ms. Bernard argues that the majority erred in concluding that Mr. Guidry's inconsistent testimony as to when and where the accident occurred–in the intersection as he was turning right or north of the intersection after he completed his turn–"was due to a 'misperception' that did not reflect upon [his] credibility as to the color of the traffic light" when he made his turn. We agree.

We are mindful that the manifest error standard of review applies when the fact finder's determination is based upon a credibility evaluation "for only the

factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citing *Canter v. Koehring*, 283 So.2d 716 (La.1973)). This standard cannot be applied blindly, however. Accordingly, "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story," we can conclude that "a finding purportedly based upon a credibility determination" is manifestly erroneous or clearly wrong. *Id.* at 844-45.

The trial court found that both parties were "very credible"; yet, it rejected Mr. Guidry's testimony on two of the three determinative issues in this case. First, the trial court concluded that the physical damage to the parties' vehicles supported Ms. Bernard's testimony that the accident occurred in the intersection while Mr. Guidry was in the process of turning from Carmel Drive on to Louisiana Avenue. In doing so, the trial court rejected Mr. Guidry's testimony that the accident occurred north of the intersection after he completed his turn. Notably, Mr. Guidry's trial testimony on that issue contradicted his written statement given the day of the accident, where he stated that "while turning right . . . my vehicle was struck." Mr. Guidry testified this inconsistency was due to it being "hectic" with a lot of people around and his worry about his wife's injuries after the accident. According to Mr. Guidry, he was so worried about his wife's injuries that he "mistakenly" wrote down that the accident occurred when he was turning right, rather than after he completed his turn. Mrs. Guidry did not seek medical treatment for her injuries, however, until October 14, a week after the accident occurred.

2

Next, the trial court rejected Mr. Guidry's testimony that he looked to his left before beginning his right turn but did not see Ms. Bernard approaching the intersection. Mr. Guidry testified at trial that he looked left before turning right. In his deposition, Mr. Guidry was asked whether he looked to his left before "actually turning your wheel to negotiate your right-hand turn," and he testified that he did not recall. Mr. Guidry explained he testified in city court that he "wouldn't have begun [his] turn without looking left" and that his testimony in city court took place at least two years before his deposition was taken. Nonetheless, the trial court accepted Ms. Bernard's testimony on this issue and rejected Mr. Guidry's explanation of the inconsistencies in his testimony, finding it was not possible that he looked to his left before beginning his turn but did not see Ms. Bernard approaching the intersection.

The trial court rejected Mr. Guidry's testimony on these two issues, and the record supports these conclusions. Thus, the trial court found him not to be credible with regard to two of the three determinative facts in this case yet still found him to be credible as to the remaining determinative fact, whether his traffic light was green or red when he turned right. This finding contradicts the trial court's own findings of fact regarding Mr. Guidry's credibility and fails to recognize the internal inconsistency of Mr. Guidry's contention that his written statement was accurate only with regard to the color of the traffic light. For these reasons, we conclude that a reasonable fact finder would not credit Mr. Guidry's testimony that he had a green light when he turned from Carmel Drive onto Louisiana Avenue. Accordingly, we find the trial court's conclusions that Mr. Guidry's testimony on that issue was credible and that the evidence was in equipoise were manifestly erroneous.

Nothing in the record discredits Ms. Bernard's credibility. Therefore, we accept the trial court's assessment of Ms. Bernard as being credible and accept Ms. Bernard's testimony that she had a green light when she entered the intersection. Accordingly, we conclude that Ms. Bernard carried her burden of proof and reverse the judgment of the trial court. We assess Mr. Guidry with 100% fault in causing the accident.

### General Damages

Ms. Bernard seeks damages for a neck and shoulder injury she allegedly sustained in the accident. An ambulance was called to the scene of the accident, and Ms. Bernard was transported to Lafayette General Medical Center in a cervical collar where she received treatment in the emergency room. Thereafter, Ms. Bernard sought medical treatment off and on from various health care providers for complaints of pain in her right shoulder and trapezius musculature.

Determining the injuries Ms. Bernard suffered as a result of the accident and the treatment associated with those injuries has required close review of the medical evidence because she suffered injuries in other accidents that occurred before and after the October 10, 2010 accident (hereinafter referred to as "the 2010 accident"). After conducting a close review of the medical evidence relating to all the treatment she received for the period beginning in April 2008 and ending at the time of trial, we conclude that Ms. Bernard proved she suffered injuries in the 2010 accident and is entitled to awards for general and special damages.

Prior to the 2010 accident, Ms. Bernard had been involved in automobile accident on April 24, 2008. Following that accident, Ms. Bernard was treated for low back, neck, and right shoulder pain by Dr. John R. Humphries, an orthopedic surgeon. She last saw Dr. Humphries on November 18, 2008, at which time she

4

reported having no pain for one and one-half weeks in her right shoulder. She also reported that her last neck pain was a "long time ago." On examination, Dr. Humphries found that Ms. Bernard had full mobility of her neck with no reported pain. Dr. Humphries planned to see and release Ms. Bernard one month later if she had no further pain. Ms. Bernard did not return to Dr. Humphries and sought no further medical treatment for her shoulder or neck until the 2010 accident.

Ms. Bernard testified that she experienced pain in her right shoulder and trapezius when she was hit on October 7, 2010. After the 2010 accident, Ms. Bernard's primary source of treatment for her injuries was at the Moss Street Medical Clinic where she was treated by Rickie Johnson, a physician's assistant. Mr. Johnson's treatment of Ms. Bernard was supervised by Dr. John Dugal, a general practitioner.

Mr. Johnson prescribed physical therapy for Ms. Bernard's pain, but Ms. Bernard did not attend all of her scheduled therapy sessions. During the course of the physical therapy, the physical therapist questioned Ms. Bernard's compliance with her exercises at home. As of January 26, 2011, the physical therapist felt that Ms. Bernard would not benefit from further therapy. Ms. Bernard explained that her employment as a child care provider in her home limited her ability to attend those sessions because she could not always find a substitute care provider for the children.

Ms. Bernard reported right shoulder pain to Mr. Johnson on her initial November 4, 2010, visit, and thereafter on January 6, April 28, and July 28, 2011. On referral by Mr. Johnson, Ms. Bernard saw Dr. Thomas Montgomery, an orthopedic surgeon, for an evaluation of her right shoulder pain on September 12,

2011. An MRI of her right shoulder showed possible bursitis. On examination, Dr. Montgomery noted exquisite tenderness in Ms. Bernard's right trapezius musculature area midway between the cervical and AC joint. Dr. Montgomery concluded that her right shoulder examination was normal, but she had trapezius myofascial pain and recommended that she receive trigger point injections in the myofascial area of her trapezius musculature area. There is no evidence that Ms. Bernard requested or received the recommended injections.

Ms. Bernard did not seek treatment again for her shoulder pain until April 30, 2012, after she had fallen in a Walmart store on April 4, 2012. On April 30, 2012, she was seen at the Moss Street Medical Clinic for a pap smear, and she reported having right shoulder pain "at times." Ms. Bernard testified that the fall at Walmart aggravated her right shoulder. There is no record of treatment for right shoulder pain again until April 30, 2013, when Ms. Bernard again sought treatment at the Moss Street Medical Clinic. On that date, she reported headaches, sore throat, sinus congestion, and worsening of her right shoulder pain after being involved in another automobile accident on April 16, 2013.

After the April 16, 2013 accident, Ms. Bernard complained of right shoulder pain, and an MRI of her neck on October 30, 2013, revealed reversal of the lordotic curvature centered at C5-C6 with mild disc desiccation at essentially every cervical level. Small disc osteophyte complex without significant canal or neural foraminal stenosis was identified at levels C2-C3 through C6-C7. Although Ms. Bernard testified, and her medical records show, that she had no pain extending up from her trapezius into her neck until after the April 16, 2013 accident, she sought to relate these MRI findings to the 2010 accident through Dr. Dugal's testimony. Dr. Dugal initially testified that he believed Ms. Bernard's

cervical condition was related to the 2010 accident because nothing was ever found to be objectively wrong with her right shoulder. He opined that the pain in her right shoulder and trapezius muscle was radiating pain from her neck.

On cross-examination, Ms. Bernard's April 24, 2008 accident and complaints of neck and shoulder pain to Dr. Humphries were made known Dr. Dugal, along with the fact that Dr. Humphries had never actually released Ms. Bernard from his care. As a result, Dr. Dugal retracted his original opinion and testified that with regard to Ms. Bernard's cervical condition, he could not "point the arrow more at one than the other," meaning he could not determine whether her cervical condition was related to the April 24, 2008 accident or the 2010 accident. Dr. Dugal also opined that if Ms. Bernard was pain free between her last visit with Dr. Humphries on November 18, 2008, and the 2010 accident, the pain in her right shoulder and trapezius was more probably than not related to the 2010 accident.

Based on this evidence, we conclude that Ms. Bernard's injuries from her April 24, 2008 accident had resolved by the October 2010 accident and that she suffered right shoulder and trapezius myofascial pain as a result of the accident. Pursuant to Dr. Dugal's testimony, we do not find that the cervical condition shown on the October 30, 2013 MRI was proven to be related to the 2010 accident.

The right shoulder and trapezius pain caused by the 2010 accident appear to have substantially subsided after September 2011, when Ms. Bernard reported only having right shoulder pain "at times," because she did not seek treatment again for that pain until after her April 2012 fall at Walmart. Moreover, she did not seek treatment again for right shoulder pain until April 30, 2013, after being involved in the April 16, 2013 automobile accident.

7

A review of jurisprudence for awards made for similar injuries revealed the following cases that we find helpful in assessing Ms. Bernard's damages: *Brooks v. Henson Fashion Floors, Inc.*, 26,378 (La.App. 2 Cir. 12/7/94), 647 So.2d 440 ($20,000 awarded in general damages for tendonitis of the shoulder with continued pain for twenty months); *Talamo v. Shad*, 619 So.2d La.App. 4 Cir.), *writ denied*, 625 So.2d 175 (La.1993) ($15,000 awarded to young woman who would suffer flare-ups of bicep tendonitis for the rest of her life); *Mayeux v. Selle*, 99-948 (La.App. 5 Cir. 11/10/99), 747 So.2d 1174 (award of $22,500 for a shoulder injury of fifteen months with residual complaints).

We award Ms. Bernard general damages in the amount of $20,000.00, which reflects that the pain in her right shoulder and trapezius musculature caused by the 2010 accident had become intermittent in nature by July 2011 and did not greatly affect Ms. Bernard because she did not follow the treatment recommendations of her physical therapist and physicians and she did not seek treatment for pain in those areas unless she sustained other injuries in unrelated events.

*Medical Expenses*

Ms. Bernard seeks reimbursement of medical expenses in the amount of $11,416.29. The defendants seek to reduce charges incurred by Ms. Bernard at the Moss Street Medical Clinic by $370.00 for visits that they assert are not related to the 2010 accident. Dr. Dugal and Ms. Bernard agreed that if she did not complain of right shoulder pain on a visit after the 2010 accident, the charges for those visits were not related to the accident. Dr. Dugal testified that two of Ms. Bernard's visits to the Moss Street Medical Clinic were not related to the 2010 accident because she did not complain of right shoulder or trapezius pain on those visits. The defendants also assert that the April 30, 2013 visit to the Moss Street Medical

8

Clinic should be excluded because although Ms. Bernard complained of pain in the right shoulder on that date, the April 16, 2013 automobile necessitated that visit. We agree. For these reasons, we reduce the amount Ms. Bernard seeks to recover in medical expenses sought by $370.00,[1] the charges for the unrelated visits to Moss Street Medical Clinic.

The defendants seek to further reduce this recovery by medical expenses totaling $4,860.89 that were incurred after the April 16, 2013 accident. As noted above, Ms. Bernard did not seek treatment for right shoulder or trapezius musculature pain after July 2011, until after her April 2012 fall at Walmart. On April 30, 2012, she saw Mr. Johnson for a pap smear and reported having right shoulder pain "at times." Ms. Bernard saw Mr. Johnson on July 24 and July 31, 2012, but did not complain of right shoulder or trapezius pain and denied neck pain. She did not seek treatment again for right shoulder pain until after the April 16, 2013 accident, when she reported that her right shoulder pain had worsened after that accident. In light of this history and Dr. Dugal's inability to relate her cervical condition to the 2010 accident, we agree that those medical expenses should be excluded from the medical expenses Ms. Bernard seeks to recover. Accordingly, Ms. Bernard is awarded medical expenses in the amount of $6,185.40.

### Lost Wages

Ms. Bernard claims she lost wages in the amount of $1,109.00 that she associates with eighteen days of missed work due to doctor appointments and four hours of missed work she missed for medical treatment. Ms. Bernard testified that

---

[1] The dates and the associated charges of these three visits are: July 24, 2012–$115.00; July 31, 2012-$115.00; and April 30, 2013–$140.00.

she was self-employed as a babysitter for four children whose parents paid her $15.00 per child per day for her services.

A plaintiff's testimony alone "is sufficient to prove lost wages as long as the testimony is uncontradicted and reasonably establishes the claim." *Richard v. Teague*, 92-17, p. 22 (La.App. 3 Cir. 5/4/94), 636 So.2d 1160, 1174, *writ denied*, 94-1934 (La. 11/11/94), 644 So.2d 388.

Based on Ms. Bernard's medical records, she attended nine physical therapy sessions, seven doctor appointments, and one MRI session during the time that we determined she suffered with the injuries she sustained in the 2010 accident. Three of the doctor appointments have been determined to be unrelated to that accident. Accordingly, we award lost wages at the rate of $60.00 per day for fourteen days of missed work for a total of $840.00.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed. Judgment is awarded in favor of Kysha Lashane Bernard and against Livingston C. Guidry and Shelter Mutual Insurance as follows:

| | |
|---|---|
| General Damages | $20,000.00 |
| Medical Expenses | $ 6,185.40 |
| Lost Wages | $ 840.00 |

Costs of this appeal are assessed to Livingston C. Guidry and Shelter Mutual Insurance Company.

**REVERSED AND RENDERED.**

NUMBER 14-234

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


LIVINGSTON C. GUIDRY, ET UX.

VERSUS

KYSHA LASHANE BERNARD, ET AL.


AMY, J., dissenting on rehearing.

Because I find that the trial court was not manifestly erroneous or clearly wrong in making its findings of fact, I respectfully dissent from the majority decision.

It is a long-standing tenant of Lousiana law that the trial court's factual findings are subject to the manifest error / clearly wrong standard of review. *Snider v. Louisiana Med. Mut. Ins. Co.*, 13-579 (La. 12/10/13), 130 So.3d 922 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)). In order to reverse the factfinder's determinations, the appellate court must determine both that a reasonable factual basis for the determination does not exist in the record and that the record establishes that the finding is clearly wrong / manifestly erroneous. *Id.* (citing *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993)). Thus, the appellate court's determination is not whether the factfinder's determination was right or wrong, but whether the factfinder's determination is a reasonable one. *Id.* Additionally, great deference is due factual findings that are based on credibility determinations, and, where the factfinder's determination is based on its decision to credit the testimony of one or more witnesses, those findings can "virtually never" be manifestly erroneous or clearly wrong. *Id.* at 938.

In a negligence action, it is an "unremarkable proposition" that the plaintiff bears the burden of proving his case. *Miller v. Leonard*, 588 So.2d 79, 83

(La.1991). Similarly, a plaintiff-in-reconvention must prove his claim in the same manner as the plaintiff in the main demand. *Id.*

The trial court concluded that the determinative issue in this case was which party had the green light and that the witnesses said "diametrically opposing things about who had the light[.]" The trial court further noted that the physical evidence was not helpful and that there was no corroboration for most of the testimony. The trial court found that both parties were "very credible" and that, based on the evidence provided, she could not determine which party had the red light. Thus, the trial court determined that she could not find in favor of either party.

The majority finds that the trial court's rejection of Mr. Guidry's testimony on two of the three determinative issues in this case precludes a determination that Mr. Guidry was credible on the issue of which party possessed the green light. In my view, this impermissibly impinges on the factfinder's prerogative to accept or reject, *in whole or in part*, the testimony of any witness. *In re Succession of Lawler*, 42,940 (La.App. 2 Cir. 3/26/08), 980 So.2d 214, *writ denied*, 08-1117 (La. 9/19/08), 992 So.2d 939. Based on my reading of the record, I find that the trial court was not manifestly erroneous or clearly wrong in making its findings of fact and in determining that the evidence was insufficient to determine which party had the red light. Therefore, I find that the trial court did not err in determining that neither party met its burden of proof in this case and that neither party was entitled to recovery.

For these reasons, I respectfully dissent.

2