BLEICH, J. (Pro Tempore )
Appellants, Linda Elliott Murphy and Paula Mae Elliott, have appealed from the trial court's judgment dismissing their petition to annul a will executed by their father, R.B. Elliott, based upon the court's finding that the May 20, 2015, will was valid under La. C.C. art. 1577. For the reasons set forth below, we affirm.
*1145 FACTS AND PROCEDURAL BACKGROUND
R.B. Elliott died on January 6, 2016, in Bossier City, Louisiana. On January 28, 2016, his surviving spouse, Shu Holt Elliott, filed a petition to probate a will executed by Mr. Elliott on May 20, 2015, and to be put in possession of the estate. On February 2, 2016, the will was admitted for probate and a judgment of possession was rendered by the trial court. On March 30, 2016, Mr. Elliott's daughters, Linda Elliott Murphy ("Linda") and Paula Mae Elliott ("Paula"), filed a petition to annul the probated testament, asserting that because Mr. Elliott was unable to read, the will was null because it failed to comply with the provisions of La. C.C. art. 1579.
Trial began on August 8, 2017, and concluded on December 18, 2017. The trial court rendered its "Judgment with Reasons" on January 23, 2018, upholding the validity of the May 20, 2015, will. The trial court specifically found that: Mr. Elliott was capable of reading the May 20, 2015, will he had Attorney Joey Greenwald prepare; the May 20, 2015, will met the form requirements of La. C.C. art. 1577, and thus was not required to meet the additional requirements of La. C.C. art. 1579 ; and, the May 20, 2015, will of Mr. Elliott was not the product of fraud, duress, or undue influence. It is from this judgment that Linda and Paula, Mr. Elliott's daughters, have appealed.
DISCUSSION
Appellants argue that the trial court erred in failing to find that they presented clear and convincing evidence of Mr. Elliott's legal blindness and inability to read the will without the use of magnification in addition to his eyeglasses. According to Appellants, because the will in this case was a notarial will under La. C.C. art. 1577, and Mr. Elliott was unable to read, the will's failure to comply with the additional requirements of La. C.C. art. 1579 makes the May 20, 2015, will a nullity.
According to Appellee, the argument made by Appellants that Mr. Elliott was unable to read the May 20, 2015, will is based "almost solely" on lay testimony.
Appellants have ignored the testimony of Dr. Wilson Baber, the sole expert witness in this case, who was the only person who could determine the ability (or lack thereof) of Mr. Elliott to read at the time of the will's execution.
Applicable Legal Principles
There are two forms for wills in Louisiana: olographic and notarial. La. C.C. art. 1577 prescribes the form requirements for the notarial testament:
The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence, the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ___ day of __________, _____."
La. C.C. art. 1579 provides additional requirements where the testator is unable to read, as follows, in pertinent part:
When a testator does not know how to read, or is physically impaired to the *1146 extent that he cannot read, whether or not he is able to sign his name, the procedure for execution of a notarial testament is as follows:
(1) The written testament must be read aloud in the presence of the testator, the notary, and two competent witnesses. The witnesses, and the notary if he is not the person who reads the testament aloud, must follow the reading on copies of the testament. After the reading, the testator must declare or signify to them that he heard the reading, and that the instrument is his testament. If he knows how, and is able to do so, the testator must sign his name at the end of the testament and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and witnesses must sign the following declaration, or one substantially similar: "This testament has been read aloud in our presence and in the presence of the testator, such reading having been followed on copies of the testament by the witnesses [, and the notary if he is not the person who reads it aloud,] and in our presence the testator declared or signified that he heard the reading, and that the instrument is his testament, and that he signed his name at the end of the testament and on each other separate page; and in the presence of the testator and each other, we have subscribed our names this ___ day of __________, _____."
A notarial testament does not need to be proved. La. C.C.P. art. 2891 ; In re Succession of Lanasa , 06-561 (La. App. 5 Cir. 12/27/06), 948 So.2d 288. Upon production of the testament, the court shall order it filed and executed and this order shall have the effect of probate. Id. The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. La. C.C. art. 1573 ; In re Succession of Lanasa, supra. In an action to annul a notarial testament, the plaintiff always has the burden of proving the invalidity of the testament. La. C.C.P. art. 2932(B).
A testator's ability to read is an element of testamentary capacity, not authenticity or formality. In re Succession of Lawler , 42,940 (La. App. 2 Cir. 3/26/08), 980 So.2d 214, writ denied , 08-1117 (La. 9/19/08), 992 So.2d 939 ; In re Succession of Lanasa , supra ; In re Succession of Young , 03-1233 (La. App. 3 Cir. 3/3/04), 867 So.2d 139 ; In re Succession of Graham , 01-676 (La. App. 5 Cir. 11/27/01), 803 So.2d 195. The capacity to make a will is tested at the time the will is made. La. C.C. art. 1471 ; Succession of Young , 96-1206 (La. App. 3 Cir. 3/5/97), 692 So.2d 1149. A party is presumed to have testamentary capacity, and the opponent must put forth clear and convincing evidence of incapacity in order to defeat this presumption. Succession of Lyons , 452 So.2d 1161 (La. 1984) ; Succession of Lawler, supra. ; Succession of Young, supra. Whether a testator has the ability to read is a question of fact. In re Succession of Lanasa, supra ; In re Succession of Graham, supra. Absent manifest error, the trial court's finding will not be overturned on appeal. Succession of Lawler, supra ; In re Succession of Young, supra.
The following is excerpted from the trial court's written reasons for judgment:
At issue in this matter is determination of the validity of the May 20, 2015 Last Will and Testament of R.B. Elliott ("Mr. Elliott"), either because it was not properly executed due to Mr. Elliott's alleged inability to read or because it was the product of undue influence. Mr. Elliott was the father of Paula Elliott ("Paula") and Linda Elliott ("Linda") from a previous marriage, and after remarrying their mother he then, on July 24, 2015, married Shu Holt. The parties have all *1147 been intertwined in each other's lives for quite some time.
Mr. Elliott and his first wife, Lieselotte ("Lita"), the mother of Paula and Linda, apparently attempted to resolve their community property issues and went so far as to remarry to address military retirement benefits. Lita passed away on April 24, 2015. Prior to Lita's death, Paula and Linda instituted an interdiction proceeding against Mr. Elliott.... The Court does not discount the significance of the fact that immediately following an attempted interdiction proceeding that Mr. Elliott had a new will drafted and signed within a month. The Court is satisfied that Mr. Elliott considered his obligations to his first wife and mother of his children (and therefore his children as well) to have been satisfied and that he reasonably decided to replace his prior will dated October 6, 2011. That testament named Lita as principal beneficiary with Linda and Paula as successor beneficiaries. The May 20, 2015 testament in question replaces Lita with Shu Holt, and leaves Linda and Paula and successor legatees. Following the death of Lita, the conclusion of the interdiction proceeding, and the drafting of his new will, Mr. Elliott married Shu Holt in July 2015, and Mr. Elliott passed away January 6, 2016.
The testimony adduced at trial indicates that Mr. Ellitott desired to direct his remaining separate property to Shu Holt (whom he married two months after execution of the testament in question). To accomplish that end, he utilized the same attorney, Joe Greenwald, who represented him during the interdiction proceeding. Mr. Greenwald testified at trial. In addition to Mr. Greenwald's testimony regarding Mr. Elliott and the process of preparing and executing the will, there was also introduced limited medical records of Mr. Elliott regarding his vision. No experts were called to testify at the trial but introduced as Joint Exhibit 1 was the deposition of Wilson Baber, M.D., who was agreed by counsel to be an expert in the field of Ophthalmology with a specialty in Vitreal retinal surgery.
Paula and Linda contend that Mr. Elliott's testament is a nullity because it fails to comply with stringent requirements of Louisiana Civil Code article 1579 for a last will and testament of a testator unable to read to be effective. Mr. Greenwald testified it was his practice to read the will aloud with every client. Regardless of whether Mr. Greenwald read the May 2015 will he prepared, it does not contain the required attestation clause confirming it was read aloud, as required by La. C.C. art. 1579. Therefore, if there was a requirement that Mr. Elliott's testament of May 20, 2015, comply with the requirements of La. C.C. art. 1579, it clearly does not. However, failing to meet the requirements this article is not fatal to the testament.
Based upon the pleadings and limited medical records introduced at trial, it would almost seem a foregone conclusion Mr. Elliott could not read, despite Mr. Greenwald's testimony about his numerous interactions with Mr. Elliott in his office and no appreciation of any such inability on his behalf. What is of particular significance in reaching a determination on this matter is the deposition testimony of the Ophthalmologist Dr. Baber, who treated Mr. Elliott for a number of years.
Of particular significance to the Court was depth of the discussion regarding "legally blind" and whether or not that meant Mr. Elliott was completely unable to read in 2015 when the will was prepared. It is worth noting that counsel for Plaintiffs points out that it was in 2008 that Mr. Elliott would have been "legally *1148 blind" but no mention has ever been made of the fact Mr. Elliott executed a prior will in favor of Lita with Paula and Linda as successor legatees in December 11, 2011, the very will they now seek to have revived with a declaration the 2015 will was a nullity.
Dr. Baber testified that the criteria for determination of legally blind [status] and its implications in driving vehicles and the like is not determinative of whether Mr. Elliott could read with some type of assistance. Prescription eyewear, a magnifying glass, and other tools are available to assist those with similar diagnosis (sic) as Mr. Elliott to read. When asked, Dr. Baber confirmed Mr. Elliott's signature on the testament in 2015 was similar to documents signed by Mr. Elliott over a decade earlier in Dr. Baber's office. When Dr. Baber was questioned by Mr. Cox and Mr. Lawrence as to [a] definitive statement on whether Mr. Elliott would not have been able to read the testament on the date he signed it, Dr. Baber could not offer an opinion. Dr. Baber also did not agree with conclusions reached by others regarding Mr. Elliott's abilities. As the treating physician and expert in the field of Ophthalmology, Dr. Baber's testimony was compelling. Dr, Baber's testimony could have been that based upon his treatment of Mr. Elliott not only did he meet the requirement of being "legally blind" but under no circumstances could he read a document. Dr. Baber's testimony was nothing close to such a declaration and he is deemed fully credible and capable of rendering and supporting his own conclusion and opinions, and did so.
There was no evidence or testimony that on May 20, 2015, during Mr. Elliott's visit to Mr. Greenwald's office that he was unable to read. [The will] did not have to be read in its entirety to him, but Mr. Greenwald's testimony is that it was, and it appears to the satisfaction of the court to be an accurate and legally effective expression of his last wishes.
Considering the evidence and testimony adduced, it is the opinion of the Court that Mr. Elliott was capable of reading the last will and testament he directed Mr. Greenwald to prepare, and further that the document meets the requirements of Louisiana Civil Code article 1577 as to form. As such, there is no requirement the instrument meet any additional requirements provided in La. C.C. art. 1579.
This case is similar to that of In re Succession of Young, supra. In that case, 867 So.2d at 141, the trial and appellate courts both noted that the testator's treating optometrist would not state that it was impossible for the testator to have read her will as written, explaining that she would have had to have some type of magnifier to do so. Specifically, the trial court observed, "I ... find that number one, [the testator] was able to read. She knew how to read. By the only expert testimony received, Dr. Christian stated that it was not impossible with magnification devices, television or otherwise that she could read." Id.
We have reviewed this record in its entirety and, while this is a very close case, we cannot say that the trial court's determination that Mr. Elliott could physically read at the time he executed his will is manifestly erroneous, keeping in mind that Appellants had the burden of establishing that he could not do so by clear and convincing evidence. The evidence presented by Appellants that contradicted the evidence presented by Shu Elliott did not meet this stringent burden. As noted in La. C.C. art. 1577, comment (f), article 1577does not require that the testator *1149 actually read the testament at the time of its execution . (Emphasis added).[1]
CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed to Appellants, Linda Elliott Murphy and Paula Mae Elliott.

Although not assigned by Appellants as error, we do not find that the trial court was clearly wrong in its finding of no undue influence.