Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,615-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF SARA ANN BROCATO

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 648,032

Honorable Michael A. Pitman, Judge

* * * * *

| | |
|---|---|
| ALAN PESNELL LAWYER, LLC<br>By: William Alan Pesnell | Counsel for Appellant,<br>Ronald Norman |
| RITA KAY BACOT | |
| FLOWERS DAVIS, PLLC<br>By: John C. Dalton Griffin | Counsel for Appellee,<br>Jennifer Gail Brocato |
| ARBUCKLE & BURGESS, LLC<br>By: Rhys E. Burgess<br>Ethan Arbuckle | |

* * * * *

Before STONE, THOMPSON, and ELLENDER, JJ.

**ELLENDER, J.**

Ronald Norman, the executor and beneficiary of Sara Ann Brocato's first will, appeals a judgment declaring that will null and void, admitting to probate Brocato's second will, which named a different executor and beneficiaries, and ruling Norman lacked standing to challenge the second will. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

Sara Ann Brocato died in Shreveport in January 2024. She was never married and had no children. However, she left two wills. The first will, dated November 1, 2023 ("the November will"), named her longtime coworker Ronald Norman executor and beneficiary of her entire estate, including a house in Forbing Woods Subdivision, two IRAs, two checking accounts, and proceeds of one mineral lease. Its opening paragraph stated that because of the testator's visual impairment, the entire document was read to her before she signed it.[1] This will was prepared and notarized by a "mobile notary," Corey D. Williams, and witnessed by two of Brocato's neighbors, Carrie and Kalen Rawls.

Brocato then signed another will, dated January 5, 2024 ("the January will"). This will named her niece-in-law, Jennifer Brocato, executor, and Jennifer and her husband (Brocato's nephew, Timothy) beneficiaries of the estate (which was not described any further). It was prepared by a local attorney, Ethan Arbuckle, and signed in the hospital where Brocato was

---

[1] The statement was as follows: "Because of my visual impairment this entire document has been read to me prior to affixing my signature." It appeared in the opening paragraph, not in the attestation clause.

terminally ill; it was witnessed by two RNs there, Patrick Adams and Joe Conger. The January will expressly revoked all other wills and made no mention that Brocato had any visual impairment.

Brocato died January 10, 2024. The next day, January 11, Norman filed a petition for recordation and execution of the November will and to be named executor. The district court signed an order confirming Norman as executor but set a hearing for other relief on January 31.

Before that hearing took place, on January 26, Jennifer filed her own petition for probate and appointment as executor, using the same docket number as Norman's petition. Jennifer's petition sought to probate the January will. The district court signed an order confirming Jennifer as executor but set a contradictory hearing on March 11, presumably to include matters originally set for January 31.

Jennifer moved to reset her hearing, and the court reset it several times. Jennifer also filed an opposition to Norman's petition for recordation and execution of the November will.

### TRIAL EVIDENCE

The hearing took place on October 3, 2024, and addressed the claims of both petitions. Norman went first, trying to prove the validity of the November will. Norman himself did not testify, but he called two witnesses.

Corey Williams testified he was a mobile notary public with 25 years' experience and no disciplinary complaints. He had met Brocato in October 2023, in connection with her sister's succession; later, Norman called him about drafting Brocato's will. Williams did so, including the statement about Brocato's vision impairment; when he saw her in November 2023, he agreed this was necessary, and he read the whole will to her. After the

2

reading, she acknowledged it was her intent to make Norman her heir and executor. Williams testified he helped her position her hand in the right place to sign, but clarified to say he placed the paper under her hand. About two months later, Jennifer called him to say Brocato had been very sick, just got out of the hospital, and wanted to talk to him about "the documents" (not specified further). However, Williams never heard from Jennifer or Brocato again.

On cross-examination, Williams reiterated that, based on his observation, Brocato could not see, and both Brocato and Norman told him this was the case; however, he admitted he did not give her an eye exam. He also admitted that the November will did not state explicitly that Brocato could not read.

Carrie Rawls, one of the witnesses to the November will, is a schoolteacher and was Brocato's next-door neighbor. She described various forms of assistance she gave Brocato starting about 2016 because of her impaired vision: helping her get packages off the front porch, because she could not see them through the glass door; walking her dog; adjusting controls on her TV and computer. She said Brocato had learned how to send text messages using voice, and Rawls never saw her physically writing or typing.

On cross-examination, Rawls said she thought Norman was a relative of Brocato's, as much as he was at the house. Rawls also disclosed that she was not present for the entire reading of the will: the others called her to come only as they were wrapping it up. On questioning by the court, Rawls confirmed that she and her son, the other witness, were not there for the

entire reading of the will to Brocato. She insisted that since 2016, Brocato could not see well enough to read anything.

After Norman rested, Jennifer moved for involuntary dismissal. The court denied this, stating Brocato "certainly was visually impaired such that she could not read the will[.]" Counsel for Jennifer argued that Brocato had *some* impairment but was not "unable to read," which was the standard for a special will under La. C.C. art. 1579.

Ethan Arbuckle, the attorney who drafted the January will, testified Jennifer called him and asked him to "update" Brocato's will; she put Brocato on the phone, and Brocato told him what she wanted the will to say. Arbuckle wrote these instructions into the will. Neither Brocato nor Jennifer told him the testator was visually impaired, so he made no statement to that effect. He carried the will to the hospital, where Brocato was in bed and Jennifer and Tim were in the room with her. Two nurses came in as witnesses, and Arbuckle read the will to Brocato; she stated it was what she wanted. The nurses propped her up in bed so she could sign, and she did so without any further assistance. She never told Arbuckle she was blind or could not read. Norman did not cross-examine Arbuckle.

Patrick Adams, one of the witnesses, testified he was a nurse at the Critical Care Unit and had cared for Brocato for one shift. He said the will was explained to her, she signed each page, and nobody questioned her ability to read. Joe Conger, the other witness, testified he was an RN who had cared for Brocato intensely for about two days, as she was "very sick." However, she was "absolutely" of sound mind, showed no signs that she could not read, and she recognized all the people in the room "by sight."

4

Jennifer testified that she was Brocato's niece by marriage; she had talked to or texted with her every day since she and Tim moved to Oregon. Jennifer flew into Shreveport and stayed with Brocato from the time she went in the hospital until she died. She agreed Brocato could not drive, but she made shopping lists, kept notebook journals, wrote out bills, and jotted down phone numbers, all by using a "big Sharpie." (Some of the journals were admitted in evidence.) She admitted that Brocato would not have been able to read a will in January 2024, but if it were read to her, she would have understood it. Norman did not cross-examine Jennifer.

Kim Lewis, a coworker of Brocato's, testified they had worked together for years at The Derrick, a truck stop in Keithville, in southern Caddo Parish; Brocato was the main cook and Lewis was a cook. She considered them "best friends," and although Brocato had quit in August 2021 because of health problems, they talked on the phone regularly and she visited Brocato in the hospital. Lewis stated Brocato could read if the print was in "bold, dark letters," and she kept notebooks and put handwritten notes on her refrigerator door; even in her final months, Brocato was still texting Lewis. On cross-examination, Lewis admitted the final time she saw Brocato sending a text was in 2021. She also stated that Norman was the owner of The Derrick, where she and Brocato had worked for many years.

## ACTION OF THE DISTRICT COURT

The court took the case under advisement and, in December 2024, rendered a 3½-page opinion. It found the November will was executed "under the assumption" that Brocato was sight impaired and could not read; in that event, the procedure of La. C.C. art. 1579 had to be followed,

5

including a special attestation clause.[2]  However, the one-sentence mention of Brocato's visual impairment in the body of the November will came "not even close" to the required attestation clause.  The court listed three "fatal issues" with the November will: the witnesses were not present when it was read aloud to the testator; the required attestation clause was not included; and the January will revoked it.

As for the January will, the court acknowledged Norman's argument that it was invalid because it did not follow the Art. 1579 procedure for a vision-impaired testator.  However, the testator's ability to read is presumed and the opponent of the will must prove otherwise by clear and convincing evidence.  *Succession of Lawler*, 42,940 (La. App. 2 Cir. 3/26/08), 980 So. 2d 214, *writ denied*, 08-1117 (La. 9/19/08), 992 So. 3d 743, and citations therein.  The court found Norman failed to prove Brocato's inability to read, by clear and convincing evidence; in support, it cited the testimony of Jennifer and of Carrie Rawls.  Further, the January will met all the requirements of an authentic act and a notarial will under La. C.C. art. 1577: it was drafted and notarized by an attorney, it revoked all prior wills, the witnesses were present during the whole process, the testator signed it on all pages, and nobody at the signing thought Brocato was visually impaired. The court therefore ordered the January will to be probated.

---

[2] La. C.C. art. 1579 (2) stated: "In the presence of the testator and each other, the notary and witnesses must sign the following declaration, or one substantially similar: 'This testament has been read aloud in our presence and in the presence of the testator, such reading having been followed on copies of the testament by the witnesses * * * and in our presence the testator declared or signified that he heard the reading, and that the instrument is his testament, and that he signed his name at the end of the testament and on each other separate page; and in the presence of the testator and each other, we have subscribed our names [this date].'"

Finally, the court ruled that because Norman was not an heir, he had no standing to contest the January will. *Succession of Guidry*, 06-1089 (La. App. 3 Cir. 12/6/06), 945 So. 2d 187. The court signed a judgment in accordance with these reasons on January 13, 2025.

Norman moved for new trial, but the court denied this, writing that Norman was not an heir and thus lacked standing. Norman then moved for suspensive appeal, which he later converted to devolutive.

## THE PARTIES' POSITIONS

Norman designated two assignments of error. First, he contended the court erred as a matter of law by failing to implement the directives of *Succession of Liner*, 19-02011 (La. 6/30/21), 320 So. 3d 1133, in its analysis and by rejecting the November will. He argues that a will – specifically, the November will – should be upheld "where at all possible." *Succession of Harlan*, 17-1132 (La. 5/1/18), 250 So. 3d 220. Second, he urged the court committed manifest error when it determined that it was not proved by clear and convincing evidence that Brocato was so visually impaired as to require the special procedures of La. C.C. art. 1579.

By reply brief, Jennifer argued the court properly nullified the November will, as the substantial-compliance rule of *Liner* applied only to the phrasing of the attestation clause, and not to the other formalities of La. C.C. art. 1577. *Succession of Frabbiele*, 24-00091 (La. 12/13/24), 397 So. 3d 391. She also urged that, on the record presented, the court was not plainly wrong to find that Brocato possessed sufficient ability to see to qualify for a standard notarial testament under Art. 1577 and did not require a vision-impaired testament under Art. 1579. She also shows there is a

7

presumption of capacity to make a will, La. C.C. art. 1470, and that a mild visual impairment does not negate a will. *Succession of Lawler*, *supra*.

## DISCUSSION

While the appeal was pending, the legislature significantly rewrote the law of testaments, Civil Code Book III, Title II, Chapter 6, Section 2, "Forms of Testaments." By passing 2025 La. Acts No. 30, the legislature completely repealed La. C.C. arts. 1577 and 1579 and replaced them with a revised Article 1576, effective August 1, 2025. Notably, Act No. 30 stated that its provisions "shall apply both prospectively and retroactively and shall be applied to all claims existing and pending on the effective date of this Act and all claims arising or actions filed on and after the effective date of this Act." At oral argument of this case, on October 1, 2025, counsel for both parties agreed the new law applied. This court agrees, and recognizes the district court did not have the benefit of the amendment when it heard the case and wrote its opinion, in late 2024.

The new law, La. C.C. art. 1576, provides as follows:

**Art. 1576. Notarial testament; requirements of form**

A. The notarial testament shall be prepared in writing, dated, executed before a notary public in the presence of two witnesses, and signed by the testator, each witness, and the notary. If a testator is unable to sign, the testator may affix his mark in place of signing or direct another person to sign on behalf of the testator and in the presence of the testator.

B. The signature may appear anywhere in the testament and is sufficient if it identifies the testator and evidences an intent by the testator to adopt the document as the testator's testament.

C. The date may appear anywhere in the testament, may be clarified by extrinsic evidence, and is sufficient if it resolves those controversies for which the date is relevant.

8

As pertains to this case, the new Art. 1576 eliminates the attestation clause as a condition of the validity for notarial wills, "a requirement under prior law that caused much litigation." Act No. 30, Revision Comments—2025, (b).[3]  The new law also repeals Articles 1578 and 1579, which provided special procedures for testators who were unable to sign or unable to read.  "A testator who is unable to sign can direct another person to sign in his place under this Article. * * * Before doing so, however, it is important that the document be explained to the signatory to ensure that it represents his intent."  Revision Comments—2025, (h).

Applying the new Art. 1576 to the November will, we find that the deficiency in the attestation clause, one of the reasons cited by the district court to nullify the document, is of no moment.  Since the attestation clause is not required, this is not a basis to invalidate the will.  Art. 1576 (A) still requires that the will be "executed before a notary public in the presence of two witnesses[.]"  This record also shows that the witnesses to the November will were not present for the entire reading to Brocato, but arrived in time to hear her confirm its contents as her will and to see her sign it.  On this evidence, using the standards of the new Art. 1576, we would reverse the district court's holding that the November will was formally invalid.

However, that leaves the January will.  The record shows that this document was also executed before a notary public in the presence of two witnesses, and signed by the testator, each witness, and the notary, all in

_____

[3] This court might surmise that the later opinion of *Succession of Frabbiele*, *supra*, though not mentioned in the comments, only fortified the legislature's view that the attestation clause had become less an aid in proving authenticity than an exercise in technicalities.

9

compliance with the new Art. 1576 (A). The January will expressly revoked all other wills; if it is valid, the November will is without effect.

The parties presented evidence regarding Brocato's capacity when she executed the January will. All persons have the capacity to make and receive donations inter vivos and *mortis causa*, except as expressly provided by law. La. C.C. art. 1470; *Succession of Davisson*, 50,830 (La. App. 2 Cir. 12/22/16), 211 So. 3d 597, *writ denied*, 17-0307 (La. 4/7/17), 218 So. 3d 111. A challenge to a testator's capacity requires proof of incapacity by clear and convincing evidence. *Id.*; *Succession of Boisseau*, 33,861 (La. App. 2 Cir. 9/27/00), 768 So. 2d 743, *writ denied*, 00-2993 (La. 12/15/00), 777 So. 2d 1233. The findings of the district court regarding testamentary capacity are factual and will not be disturbed absent manifest error. *Succession of Thompson*, 55,561 (La. App. 8/28/24), 400 So. 3d 998; *Succession of Miller*, 54,564 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1100.

We have closely reviewed the entire record and find that it supports the district court's conclusion that the January will was valid. The attorney who wrote the will, Ethan Arbuckle, testified that he read it to Brocato in her hospital bed, and she confirmed that it stated her intentions. One of the witnesses, Adams, testified the will was explained to her; the other, Conger, testified that despite being "very sick," Brocato was "absolutely" of sound mind. Jennifer testified that Brocato would not have been able to read a will in January 2024, but if somebody read it to her, she would have understood it. Brocato's neighbor, Rawls, testified that she had to assist her in various ways, but these actions implicitly proved Brocato's presence of mind and visual acuity to order things for delivery, care for her dog, and use her TV

10

and computer. On this showing, the district court was not plainly wrong to find Brocato had the capacity to execute the will and understood its contents.

Most of the argument at trial (and on appeal) concerned Brocato's vision impairment. Under the old law, if the testator was unable to read, a special attestation clause and reading aloud were required. La. C.C. art. 1579 (repealed). Generally, a mild visual impairment was not deemed an impediment to capacity to execute a will. *Succession of Lawler*, *supra*; *Succession of Smith*, 261 So. 2d 679 (La. App. 2 Cir. 1972); *Succession of Harris*, 329 So. 2d 493 (La. App. 4 Cir.), *writ denied*, 332 So. 2d 862 (1976). Under the new law, the critical point for a vision-impaired testator is whether the document was "explained to the signatory to ensure that it represents his intent." Revision Comments—2025, (h). Given the conflicting evidence about Brocato's visual acuity and the solid evidence that the will was read and explained to her, we cannot find that the January will failed to express the testator's wishes. The portion of the judgment admitting the January will to probate is not plainly wrong.

With the validity of the January will, the November will is obviously revoked. We therefore pretermit consideration of Norman's argument regarding standing.

## CONCLUSION

For the reasons expressed, we affirm the judgment of the district court, which admitted the January will to probate and found the November will revoked. All costs are to be paid by the appellant, Ronald Norman.

**AFFIRMED.**