**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2018 Term**

_____

No. 17-0080

_____

**FILED**

**April 6, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**DANIEL W. MILLER AND
THE CITY OF PARKERSBURG,
Defendants Below, Petitioners,**

**V.**

**KEVIN ALLMAN,
Plaintiff Below, Respondent.**

_____

**Appeal from the Circuit Court of Wood County
Honorable Jeffrey B. Reed, Judge
Civil Action No. 14-C-2790**

**AFFIRMED**

_____

**Submitted:  March 13, 2018
Filed:  April 6, 2018**

**Duane J. Ruggier II
Jacob D. Layne
Pullin, Fowler, Flanagan, Brown & Poe
Charleston, West Virginia
Attorneys for Petitioners**

**Harry G. Deitzler
Hill, Peterson, Carper, Bee &
Deitzler
Charleston, West Virginia
Attorney for Respondent**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE WALKER dissents and reserves the right to file a dissenting opinion.**

**SYLLABUS BY THE COURT**

1.      The requirement in W. Va. Code § 17C-9-5 (1971) (Repl. Vol. 2017), that a motorist yield the right-of-way to an emergency vehicle, is contingent upon the motorist having a reasonable opportunity to hear the emergency vehicle's siren or see its flashing lights to allow the motorist sufficient time to yield the right-of-way.

2.      "W. Va. Code, 17C-2-5(d) (1971), requires the driver of an emergency vehicle to exercise due care under the circumstances to avoid collisions between the emergency vehicle and persons or property."  Syllabus point 4, *Peak v. Ratliff*, 185 W. Va. 548, 408 S.E.2d 300 (1991).

3.      In order for a party's counsel to obtain copies of juror qualification questionnaires of persons selected as prospective petit jurors, W. Va. Code § 52-1-5a(e) (2014) (Repl. Vol. 2016) requires counsel to request copies of the questionnaires from the circuit court clerk.

4.      "The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has 'opened the door' by introducing similarly inadmissible evidence on the same point.  Under this rule, in order to

i

be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) The original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence." Syllabus point 10, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

5. "The decision of whether to admit evidence of compromise offers [or settlements] for a purpose other than to 'prove liability for or invalidity of the claim or its amount,' W. Va. R. Evid. 408, is within the sound discretion of the circuit court." Syllabus point 7, *State ex rel. Shelton v. Burnside*, 212 W. Va. 514, 575 S.E.2d 124 (2002).

6. Syllabus point 3 of *Lacy v. CSX Transportation, Inc.*, 205 W. Va. 630, 520 S.E.2d 418 (1999), has been superseded by Rule 103(b) of the West Virginia Rules of Evidence.

7. Rule 103(b) of the West Virginia Rules of Evidence provides that when a "court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal." This provision applies to preserving a claim of error by the party who opposed the ruling, not a claim of error by the

party who prevailed on the ruling. Thus, a party who obtained a favorable definitive ruling on an issue must timely object if the opposing party violates the ruling.

8.    "Courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption."  Syllabus, *Addair v. Majestic Petroleum Co.*, 160 W. Va. 105, 232 S.E.2d 821 (1977).

9.    A plaintiff's testimony alone is sufficient to prove lost wages as long as the testimony reasonably establishes the claim.

**Davis, Justice:**

This is an appeal by the Petitioners, defendants below, Daniel W. Miller ("Mr. Miller") and the City of Parkersburg, from an order of the Circuit Court of Wood County denying their motion for new trial. The Petitioners sought a new trial after an adverse jury verdict in favor of the Respondent, Kevin Allman ("Mr. Allman"). The jury found that the Petitioners were at fault when their police vehicle rear-ended Mr. Allman's vehicle while he was driving. In this appeal, the Petitioners assign the following as error: (1) giving two improper jury instructions, (2) failing to provide a copy of the jury qualification form, (3) limiting cross-examination of a witness, (4) improper closing argument, and (5) improper general and special damages. After carefully reviewing the briefs, the arguments of the parties, the legal authority cited, and the record presented for consideration, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The record indicates that Mr. Miller is a police officer for the City of Parkersburg, West Virginia. On August 22, 2013, Mr. Miller was assigned to work at the Parkersburg High School. At some point shortly after Mr. Miller arrived at the high school, he had to leave to return to his home in Vienna, West Virginia, to attend to an emergency involving a water leak in his basement. After meeting briefly with a plumber at his home, Mr. Miller left in his police cruiser to return to the high school. While en route to the high

1

school, at about 10:00 a.m., Mr. Miller heard a police officer on his radio state that he was in foot-pursuit of a suspect. In response to the apparent distress communication, Mr. Miller activated his lights and siren and began traveling at a high rate of speed southbound on Grand Central Avenue in Vienna.

According to the record, Grand Central Avenue consists of three lanes in each direction. Its name changes to Murdoch Avenue at the intersection with Lakeview Drive. Before Mr. Miller crossed the Lakeview Drive intersection, Mr. Allman pulled out southbound from a parking lot onto Murdoch Avenue. A Deputy sheriff testified at trial that Mr. Miller approached the Lakeview Drive intersection at a minimum speed of sixty-five mph and skidded 151 feet before rear-ending Mr. Allman's vehicle on Murdoch Avenue.[1] According to the deputy, the skid marks and speed of Mr. Miller's vehicle indicate that Mr. Allman could not have seen Mr. Miller's car when he pulled out onto Murdoch Avenue.[2]

---

[1]The deputy was the official law enforcement crash reconstructionist for the accident.

[2]Mr. Allman provided videotaped deposition testimony from two motorists who were present at the time of the accident. They also testified that Mr. Allman would not have been able to see Mr. Miller before he pulled onto Murdoch Avenue. One of those witnesses testified as follows:

Q. Would you tell me what you remember about the crash?

A. I was sitting up the turning lane on Murdoch to go up Lakeview. And I heard a whooshing noise. Like a – like a car going really fast beside of me. And I turned, and I looked at my

(continued...)

2

Mr. Allman sustained injuries as a result of the collision.[3] On October 14, 2014, Mr. Allman filed the instant civil action against the Petitioners.[4] After a long period of discovery, the case was tried before a jury in November 2016. The jury returned a verdict in favor of Mr. Allman and awarded damages in the amount of $213,887.50. This appeal followed the denial of the Petitioners' post-trial motions.[5]

---

[2](...continued)
passenger Cami, and I said, what was that? And the car went past us. And we saw it was a police car.

Lights and sirens didn't – there were no lights and sirens until after he was past me. And then we – all of a sudden there was somebody pulling out of the Buffalo Wild Wings parking lot. And the next thing I know – it was so fast, the officer was up underneath the end of his car. And that's about it.

Q. Was there anything the other person could have done to avoid being hit?

A. Going at that rate of speed – maybe if the lights and sirens had been on further. But they weren't on until after he passed me. So even if he wanted to get out of the way, there wasn't enough time.

[3]Mr. Miller also sustained injuries as a result of the collision.

[4]Mr. Miller and his wife filed a counterclaim against Mr. Allman. The counterclaim was eventually settled without trial by Mr. Allman's insurer. According to Mr. Allman's brief, the settlement was for a nominal sum.

[5]It appears that the circuit court did reduce the jury award by the amount of $4,477.13, at the request of the Petitioners, as a result of first-party insurance proceeds that Mr. Allman received.

3

## II.

## STANDARD OF REVIEW

In this proceeding we are called upon to review the circuit court's denial of the Petitioners' motion for new trial or remittitur. In undertaking such a review, we have held the following:

> This Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W. Va. 105, 736 S.E.2d 338 (2012), *superseded by statute on other grounds as recognized in Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582, 587 (2017). We have also held that

> [a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976). In view of the foregoing standard, we will address the dispositive issues raised in this appeal. We will add additional standards for our review where relevant.

4

# III.

## DISCUSSION

The Petitioners have set out several issues as assignments of error: (1) improper jury instructions, (2) jury qualification form, (3) limiting cross-examination of a witness, (4) improper closing argument, and (5) awarding improper general and special damages. We will address each issue separately.

### A. Jury Instructions

The first two issues raised by the Petitioners involve jury instructions that were given by the trial court. The Petitioners argue that the trial court erred in the wording of a jury instruction on the duty to yield to an emergency vehicle, and on the standard of care of a police officer operating an emergency vehicle.

We have held that "[a]n erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction." Syl. pt. 2, *Hollen v. Linger*, 151 W. Va. 255, 151 S.E.2d 330 (1966). It has also been recognized that,

> [t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

5

Syl. pt. 6, *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 102, 459 S.E.2d 374, 379 (1995). It has been further held by this Court that,

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misle[d] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, as long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. pt. 4, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Finally, although the wording of individual instructions is within a trial court's discretion, "the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. pt. 1, in part, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996). In consideration of these standards, we will address separately each of the Petitioners' instructional assignments of error.

**1. Yielding right-of-way to an emergency vehicle**. The Petitioners contend that the trial court erred in giving Mr. Allman's jury instruction on the statutory duty of a citizen to yield to an emergency vehicle. The instruction given by the trial court was as follows:

Upon the immediate approach of an authorized emergency vehicle, such as a police car, operating emergency lights and siren, West Virginia Code § 17C-9-5 requires that the driver of every other vehicle shall yield the right-of-way, and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

*The required compliance with that code section is contingent upon the other vehicle driver having the opportunity to perceive, see or hear, the approaching police car. That other driver is not expected to yield and pull over in response to the approach of an emergency vehicle if that driver does not see or hear the emergency vehicle within sufficient time to react as required by law.* Also, the emergency vehicle law does not operate to relieve the driver of a police car, regardless of his lights and siren, from the duty to drive with due regard for the safety of all person using the highway.

(Emphasis added). The Petitioners argue that this instruction is an inaccurate statement of the law. According to the Petitioners, the controlling statute, W. Va. Code § 17C-9-5 (1971) (Repl. Vol. 2017), does not "predicate[] the duty to yield to an emergency vehicle upon the drivers' sensory perception of the approaching emergency vehicle[.]" We disagree.

To begin, the relevant text of W. Va. Code § 17C-9-5 provides as follows:

(a) Upon the immediate approach of an authorized emergency vehicle *equipped with at least one flashing lighted lamp* of a color authorized by section twenty-six, article fifteen of this chapter, *which is visible under normal atmospheric conditions from a distance of five hundred feet* to the front of such vehicle other than a police vehicle when operated as an

7

authorized emergency vehicle, *and when the driver is giving audible signal by siren*, exhaust whistle, or bell:

> (1) The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway. . . .
>
> . . . .
>
> (b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

(Emphasis added). For purposes of this appeal, the statute is not ambiguous. Well-established rules of statutory construction require that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). The plain wording of the statute requires motorists to yield the right-of-way when an emergency vehicle approaches with its lights flashing and "visible . . . from a distance of five hundred feet," and its siren audible. *See Lewis v. Kirk*, 168 W. Va. 199, 202, 283 S.E.2d 846, 848 (1981) ("This statute provides that where an emergency vehicle has its siren and flashing lights in operation, the driver of every other vehicle must yield the right of way[.]"); *Peak v. Ratliff*, 185 W. Va. 548, 554, 408 S.E.2d 300, 306 (1991) ("W. Va. Code, 17C-9-5 (1971) . . . require[s] the drivers of other vehicles to yield the right-of-way when an emergency vehicle approaches with its lights and sirens or other audible signal in operation." (footnote omitted)). The wording of the statute makes it

8

obvious that the requirement that a motorist yield the right-of-way is only possible when a motorist reasonably should have heard a siren or seen flashing lights. To conclude differently would make the requirement of flashing lights and an audible siren superfluous. *See* Syl. pt. 4, *State ex rel. Hardesty v. Aracoma - Chief Logan No. 4523, Veterans of Foreign Wars of U.S., Inc.*, 147 W. Va. 645, 645, 129 S.E.2d 921, 922 (1963) ("It is always presumed that the legislature will not enact a meaningless or useless statute.").

The Petitioners argue that the decision in *Davis v. Cross*, 152 W. Va. 540, 164 S.E.2d 899 (1968), supports their contention that there is no requirement that a motorist hear an emergency vehicle's siren or see its flashing lights. In *Davis*, the defendant, a municipal fire truck driver, was responding to an emergency call with his lights and sirens activated when he drove through an intersection and collided with a motorcycle driven by the plaintiff. The plaintiff sued the defendant for negligence.[6] The jury ultimately returned a verdict in favor of the plaintiff, but the trial judge set aside the verdict and entered judgment for the defendant. The trial judge found that the evidence established that the defendant used due care and slowed his vehicle at a stop sign before entering the intersection. The dispositive issue on appeal was whether the defendant complied with the requirements of an emergency vehicle under W. Va. Code § 17C-2-5 (1971) (Repl. Vol. 2017).[7] After a careful review of

---

[6]The plaintiff sued other parties who were dismissed prior to trial.

[7]This statute is discussed in the next section.

9

the evidence, this Court found "that the defendant complied fully with the requirements of Code 1931, 17C-2-5, as amended, thereby being entitled to the exemptions granted therein." *Davis*, 152 W. Va. at 548, 164 S.E.2d at 904. In reaching this conclusion, the opinion addressed the duty imposed on motorists under W. Va. Code § 17C-9-5 as follows:

> Furthermore, in these circumstances, the defendant had a right to believe that other drivers in the area would observe the provisions of Code, 1931, 17C-9-5, as amended. That statute provides, in effect, that upon the immediate approach of an *authorized emergency vehicle properly equipped and operated with the required audible signal and lights*, the driver of every other vehicle shall yield the right of way and stop until such emergency vehicle has passed. This the plaintiff failed to do, even though all of the positive evidence in the record showed unequivocally that the vehicle driven by the defendant sounded an audible signal and exhibited the necessary red lights.

*Davis*, 152 W. Va. at 546-47, 164 S.E.2d at 903 (emphasis added). The opinion noted that the defendant and four witnesses testified that the siren was audible and lights were displayed as required by the statute. The plaintiff testified that he did not hear the siren nor see flashing lights. The plaintiff also called a witness who testified to hearing the siren in her home, but did not recall hearing it when she came outside. The opinion found the plaintiff's evidence insufficient:

> The evidence of the plaintiff and his witness is negative in character. The most that can be said of it is that they did not hear the siren. That, however, is no evidence that it was not sounded. Concerning positive and negative evidence, this Court, in *Cavendish v. Chesapeake & Ohio Ry. Co.*, 95 W. Va. 490, 121 S.E. 489, said in Syllabus 2: "Whether a conflict arises between positive and negative evidence of this character depends upon the facts and circumstances of each case from

10

> which it may be determined whether such negative evidence has any probative value." Considering the facts and circumstances of this case, we think the evidence of the plaintiff and Mrs. Murphy is purely negative and is entitled to very little weight in comparison with the positive evidence adduced at the trial. . . .

*Davis*, 152 W. Va. at 547, 164 S.E.2d at 903.

Contrary to the Petitioners' contention, the decision in *Davis* does not stand for the proposition that the issue of whether a plaintiff hears an emergency vehicle's siren or sees its flashing lights is irrelevant. Instead, *Davis* places a burden on a motorist to produce "sufficient evidence" that he did not hear a siren or see flashing lights in order to yield the right-of-way as required by W. Va. Code § 17C-9-5. Consequently, we now hold that the requirement in W. Va. Code § 17C-9-5, that a motorist yield the right-of-way to an emergency vehicle, is contingent upon the motorist having a reasonable opportunity to hear the emergency vehicle's siren or see its flashing lights to allow the motorist sufficient time to yield the right-of-way.

In view of the decision in *Davis* and our holding, the trial court properly instructed the jury, in essence, that Mr. Allman had to produce evidence that he did not hear the siren or see the flashing lights of the Petitioners' emergency vehicle in time to yield the

11

right-of-way.[8]  Therefore, we reject the Petitioners' contention that the jury instruction was an inaccurate statement of the law.

**2.  The standard of care for operating an emergency vehicle**.  The Petitioners next argue that the trial court improperly instructed the jury on the standard of care of a police officer operating an emergency vehicle.  The instruction given provided as follows:

> When a policeman exercises the privilege of exceeding the speed limit or going through a red light at an intersection, the policeman is held to the duty of care and standard of a trained police officer who should be aware of all risks and hazards associated with exceeding a speed limit in traffic or going through a red light in an emergency vehicle.  *That is a higher standard* and duty than that required of an individual when the risks and hazards of exceeding the speed limit in traffic or taking an emergency vehicle through a red light have not been taught to such individual.  The policeman driving his cruiser is held to the duty of care and level of knowledge of a reasonable and prudent, properly trained police officer.

(Emphasis added).  The Petitioners argued below and in this appeal that the instruction "improperly stated that Officer Miller was subject to a 'higher standard' of care."  The Petitioners contend that this instruction is inconsistent with the standard set out under W. Va. Code § 17C-2-5.  This statute provides the following:

---

[8] Mr. Allman produced sufficient evidence to establish his burden.  We should also note that the issue of the sufficiency of the evidence has not been raised by the Petitioners.  The Petitioners have limited their argument to challenging the propriety of the jury instruction.

12

(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of an authorized emergency vehicle may:

(1) Park or stand, irrespective of the provisions of this chapter;

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(3) Exceed the speed limits so long as he does not endanger life or property;

(4) Disregard regulations governing direction of movement of [or] turning in specified directions.

(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when the driver of any said vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted flashing lamp as authorized by section twenty-six [§ 17C-15-26], article fifteen of this chapter which is visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a warning light visible from in front of the vehicle.

(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

W. Va. Code § 17C-2-5.

As previously mentioned, the decision in *Davis*, *supra*, examined this statute. Although *Davis* did not review the statute in the context of a jury instruction, its general observations about the standard set out under the statute are relevant to the jury instruction issue in this case. We noted the following in *Davis*:

> The principal question involved on this appeal is whether, under the circumstances revealed by the record, there was *sufficient evidence of negligence* on the part of the defendant to warrant submission of the case to the jury. . . .
>
> This is not the usual case of a collision between two ordinary vehicles. The defendant was the driver of an authorized emergency vehicle responding to an emergency call. Therefore, in determining whether the acts complained of constituted primary negligence, *a different standard must be applied than that applied to the conventional driver*. Pertinent to the decision of this case is the language of Code, 1931, 17C-2-5 . . . .
>
> . . . .
>
> Before the defendant is entitled to the exemptions granted by Code, 1931, 17C-2-5, as amended, applicable to authorized emergency vehicles, it must be shown by a clear preponderance of the evidence that he, immediately prior to and at the time of the collision, was sounding an audible signal. Also, the evidence must reveal that the vehicle was equipped with and displayed a red light visible from a distance of five hundred feet to the front to such vehicle.

*Davis*, 152 W. Va. at 542-44, 164 S.E.2d at 901-02 (emphasis added). It is clear from the statute, and the observations in *Davis*, that the jury instruction in this case correctly stated the law by informing the jury that a higher standard of care applied to the driver of an emergency

14

vehicle that exceeds the speed limit or drives through a red light. The "higher standard" imposed in this situation is that of a trained police officer, not that of a conventional driver.

The Petitioners argue that the jury instruction is inconsistent with the decision in *Peak v. Ratliff*, 185 W. Va. 548, 408 S.E.2d 300 (1991). The decision in *Peak* does not help the Petitioners because it did not involve an emergency vehicle running into another vehicle. In *Peak*, a state trooper was engaged in a high-speed pursuit of a burglary suspect. During the pursuit, the suspect's vehicle collided head-on with a car driven by a third-party. The trooper's vehicle was not involved in the collision. The victim of the collision and her husband sued the burglary suspect, the trooper, and the Department of Public Safety. A jury returned a verdict in favor of the plaintiffs. However, the trial court granted a post-trial motion for judgment filed by the trooper and the Department on the grounds that "the evidence was insufficient to permit a finding that they had acted in reckless disregard of the safety of the public." *Peak*, 185 W. Va. at 551, 408 S.E.2d at 303. On appeal, this Court was called upon to determine *what standard of care applied to a police officer in a high-speed pursuit of a suspect when the suspect collides with a third-party*. In resolving this issue the Court determined that W. Va. Code § 17C-2-5(d) set out two standards of care:

> This provision, which is common to the statutes of other states, appears to contain a dual standard of care. The provision states that the driver of an emergency vehicle has the "duty to drive with due regard for the safety of all persons," implying a negligence standard. However, this is followed by the statement that the driver is not protected "from the consequences of his

15

reckless disregard for the safety of others." This language clearly suggests that the emergency driver is accountable only for reckless acts or gross negligence.

*Peak*, 185 W. Va. at 552, 408 S.E.2d at 304. The Court ultimately concluded that the reckless acts or gross negligence standard applied to a police officer's high-speed pursuit when a fleeing suspect collides with a third-party;[9] and that the negligence standard applied when a police officer collides with a third-party while operating an emergency vehicle.[10] The opinion set out these standards in Syllabus points 4 and 5 as follows:

> 4. W. Va. Code, 17C-2-5(d) (1971), requires the driver of an emergency vehicle to exercise due care under the circumstances to avoid collisions between the emergency vehicle and persons or property.

> 5. Where the police are engaged in a vehicular pursuit of a known or suspected law violator, and the pursued vehicle collides with the vehicle of a third party, under W. Va. Code,

---

[9]The decision in *Peak v. Ratliff* reasoned as follows:

> Common sense dictates that a different standard ought to apply when officers are in pursuit of a lawbreaker who, in the ensuing chase, collides with and injures a third party. The duty to pursue and apprehend law violators should not be fettered by the specter of secondary liability based on a due care standard. It is the law violator who, in his efforts to escape justice, collides with the third party and directly causes the injuries. Only when the officer is guilty of gross negligence or reckless conduct in the pursuit that causes or contributes to the collision by the lawbreaker should liability attach.

185 W. Va. 548, 554, 408 S.E.2d 300, 306 (1991).

[10]Of course, this does not mean that a person who is grossly negligent in operating an emergency vehicle that damages property cannot be held liable.

16

> 17C-2-5 (1971), the pursuing officer is not liable for injuries to the third party arising out of the collision unless the officer's conduct in the pursuit amounted to reckless conduct or gross negligence and was a substantial factor in bringing about the collision.

*Peak*, 185 W. Va. 548, 408 S.E.2d 300.

The Petitioners do not contend that the instruction given in this case imposed the standard set out in Syllabus point 5 of *Peak*. Instead, the Petitioners argue that the instruction's use of the phrase "'higher standard' was misleading and invited the jury to presume that[,] because Officer Miller was a police officer[,] . . . he should have acted with extraordinary care or as an 'exceptional man.'" This argument has no merit. A careful review of the jury instructions as a whole reveal that the trial judge properly informed the jury that a negligence standard applied as outlined in Syllabus point 4 of *Peak*. *See* Syl. pt. 7, *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 459 S.E.2d 374 ("Instructions must be read as a whole, and if, when so read, it is apparent they could not have misled the jury, the verdict will not be disturbed, [though] one of said instructions which is not a binding instruction may have been susceptible of a doubtful construction while standing alone.") (internal quotations and citations omitted). The trial judge instructed the jury more fully as follows:

> If you find that the defendant, Daniel Miller, failed to maintain control of his vehicle, *you may find that he was negligent*, and violated West Virginia law. . . .

17

The driver of a police car running red lights and siren is not relieved from *exercising reasonable care* under the circumstances. The provisions which allow him to go through a red light or exceed the posted speed limit when responding to an emergency call while running siren and lights simply mean that the driver of the police car cannot be charged with violation of running a red light or exceeding the speed limit if he complies with the law. Regardless of lights and siren, the police car driver can still be charged with *negligence and failure to use due care in the operation of the vehicle* under all the circumstances then existing.

(Emphasis added). *See McClanahan v. Putnam Cty. Comm'n*, 174 W. Va. 478, 483, 327 S.E.2d 458, 464 (1985) ("[T]he driver of an authorized emergency vehicle cannot be charged with violating a motor vehicle statute for which the emergency vehicle statute provides an exemption. Such driver, however, can be charged with failure to exercise due care in the operation of his vehicle under all of the circumstances then existing.").

In considering the jury instructions as a whole, we find no error in the trial judge's use of the phrase "higher standard" in the jury instructions.[11] The jury instructions as a whole made clear that the standard of care was that of a police officer exercising reasonable care while operating an emergency vehicle, not that of a civilian driver operating a vehicle. It was appropriately noted in *Peak* that "[i]t may be assumed that an emergency

---

[11]The Petitioners also cited to the decision in *Honaker v. Mahon*, 210 W. Va. 53, 552 S.E.2d 788 (2001). However, *Honaker* is distinguishable as it did not involve an emergency vehicle.

vehicle driver will have had some specialized training in the operations of his vehicle."

*Peak*, 185 W. Va. at 553, 408 S.E.2d at 305.[12]

### B. Obtaining Copies of Completed Juror Qualification Forms

The next issue raised by the Petitioners is that the trial court committed error in failing to provide them with copies of the completed juror qualification forms (also referred to as juror questionnaires) prior to jury voir dire. Mr. Allman argues that the Petitioners failed to request copies of the forms as required by W. Va. Code § 52-1-5a(e) (2014) (Repl. Vol. 2016). We agree.

To begin, W. Va. Code § 52-1-5a sets out the procedure for circuit court clerks to issue juror qualification forms to prospective jurors. The statute also sets out the information prospective jurors must provide, as well as penalties for any intentional misrepresentations. The procedure for obtaining copies of juror qualification forms is set out under W. Va. Code § 52-1-5a(e), in part, as follows:

> Upon the clerk's receipt of the juror qualification questionnaires of persons selected as prospective petit jurors, he

---

[12]*See also Peak*, 185 W. Va. at 555, 408 S.E.2d at 307 ("'This Court has established the standard of care where the conduct of an officer in the chase or apprehension of a law violator results in the officer's vehicle colliding with another person, vehicle, or object. The officer is held to the standard of care that a reasonably prudent person would exercise in the discharge of official duties of a like nature under like circumstances.'" (quoting *Bullins v. Schmidt*, 322 N.C. 580, 582, 369 S.E.2d 601, 603 (1988))).

19

or she shall make the questionnaires of the persons so selected available, upon request, to counsel of record in the trial or trials for which the persons have been selected as prospective jurors . . . .

(Emphasis added). This provision of the statute is clear and unambiguous. *See* Syl. pt. 1, *Dunlap v. State Comp. Dir*., 149 W. Va. 266, 140 S.E.2d 448 (1965) ("Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein."). Accordingly, we hold that in order for a party's counsel to obtain copies of juror qualification questionnaires of persons selected as prospective petit jurors, W. Va. Code § 52-1-5a(e) requires counsel to request copies of the questionnaires from the circuit court clerk.

The record in this case is clear in showing that the Petitioners failed to comply with W. Va. Code § 52-1-5a(e), by asking the clerk to provide them with copies of the juror qualification forms. The Petitioners contend that they made a request for the forms directly to the trial judge and that the clerk was present when the request was made. Assuming, for the sake of argument, that a request to the trial judge for copies of the juror qualification forms would satisfy the statute, the record does not disclose that such a request was made. Instead, the following exchange occurred between the Petitioners' counsel and the trial judge before voir dire of the prospective jurors took place:

THE COURT: Are the defendants present and ready to proceed?

20

MR. RUGGIER: We are, Your Honor, with one question. We did not – was there a jury questionnaire that was given out to counsel?

THE COURT: Not that I'm aware of.

MR. RUGGIER: Okay. Then we are ready to proceed.

The Petitioners rely upon the above exchange to argue that they made a request for copies of the juror qualification forms. There was nothing in the above exchange that loosely resembled a request for copies of the juror qualification forms. We therefore find no merit to this assignment of error.[13]

---

[13]The Petitioners, in a convoluted manner, attempt to also rely upon the decision in *Bennett v. Warner*, 179 W. Va. 742, 372 S.E.2d 920 (1988). *Bennett* has absolutely no application to the issue presented in this case, which explains the convoluted way in which the Petitioners have attempted to find support in the case. The issue in *Bennett* involved "the failure of the trial court to require the use of juror qualification forms in the jury selection process[.]" *Bennett*, 179 W. Va. at 745, 372 S.E.2d at 923. When *Bennett* was decided, the statute made it mandatory that juror qualification forms be used. Under the current version of the statute, the use of juror qualification forms is discretionary. *See* W. Va. Code § 52-1-5a(a) (2014) (Repl. Vol. 2016) ("Not less than twenty days before the date for which persons are to report for jury duty, *the clerk may, if directed by the court*, serve by first-class mail, upon each person listed on the master list, a juror qualification form accompanied by instructions necessary for its completion." (emphasis added)).

Finally, the Petitioners have also attempted to argue that it was plain error for the clerk and trial judge to fail to provide them with copies of the juror qualification forms. The plain error doctrine has no application to this issue, because neither the clerk nor the trial judge had a duty to provide the Petitioners with copies of the juror qualification forms without a request. The only plain error in this situation was the Petitioners' failure to make a request for the forms.

### C. Cross-Examination Concerning Counterclaim Settlement

The Petitioners contend that Mr. Allman violated a pretrial motion in limine order of the trial court by presenting evidence of the counterclaim settlement between the parties during his direct examination. After this alleged testimony by Mr. Allman, the Petitioners asked the trial court to permit them to cross-examine him about the settlement agreement. The trial court denied the request. In this appeal, the Petitioners allege that such cross-examination was proper because Mr. Allman opened the door to such testimony during his direct examination, and because such evidence was admissible under Rule 408(b) of the West Virginia Rules of Evidence. We will address each contention separately.

**1. Opening the door**. The Petitioners contend that, as a result of the following testimony by Mr. Allman during direct examination, they had a right to cross-examine him about the settlement agreement.

Q. And were you sued as a result of the accident?

A. Well, I was sued after I a year later got representation by yourself, and approximately one to two days before the trial was supposed to go to court I was counter sued by the defendant and his wife.

Q. Asking for money from you?

A. Asking for money from me for loss of a marriage.

Immediately after this exchange, the Petitioners argued to the trial court that this testimony opened the door for them to cross-examine Mr. Allman about the settlement agreement. The trial court disagreed as follows:

> THE COURT: I do not believe under the current status that the questions of Mr. Deitzler asked of the plaintiff opens the door to get into a settlement of the suit. There wasn't any discussion about, you know, how it was resolved. Only the fact that he sued and then he got sued, so just because a suit has been filed doesn't mean that you can get into settlement. I guess your request is denied.

We agree with the trial court's ruling that Mr. Allman's testimony did not open the door for the admission of evidence of the settlement agreement. First, we note that the phrase "'[o]pening the door' is also referred to as the doctrine of 'curative admissibility.'" *United States v. Rucker*, 188 Fed. Appx. 772, 778 (10th Cir. 2006). *See also* 1 Louis J. Palmer, Jr., Robin Jean Davis, and Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 106.04 at 158 (6th ed. 2015) ("The phrase 'opening the door' is used by most courts to refer to the curative admissibility rule."). We have held that the following must be shown for the curative admissibility rule to be invoked:

> The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has "opened the door" by introducing similarly inadmissible evidence on the same point. Under this rule, in order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) The original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be

23

limited to the same evidentiary fact as the original inadmissible evidence.

Syl. pt. 10, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). *Accord State ex rel. Harvey v. Yoder*, 239 W. Va. 781, 806 S.E.2d 437, 446 (2017). The Petitioners have not satisfied the first prong of the *Guthrie* test, *i.e.*, Mr. Allman's testimony was not inadmissible under Rule 408 because it did not involve the settlement agreement.[14] Mr. Allman merely informed the jury that he was sued by Petitioner Miller. The Petitioners have not cited to any case law, nor have we found any, which holds that Rule 408 prohibits evidence that a party was sued.

**2. Admissibility under Rule 408(b)**. The Petitioners have also argued that evidence of the settlement agreement was admissible as an exception under Rule 408(b). Mr. Allman contends that evidence of the settlement was barred by Rule 408(a) and that it was not admissible as an exception under Rule 408(b).

To begin, we will observe that the issue of presenting evidence of a settlement is addressed in Rule 408. This rule "addresses the admissibility of evidence originating in offers to compromise or settle civil suits." 1 Palmer, *et al.*, *Handbook on Evidence* § 408.02, at 479. There are two provisions set out under Rule 408(a) that prohibit evidence concerning

_____

[14]Rule 408 is addressed generally in the next section.

24

settlements.[15] "Rule 408(a)(1) covers offers or acceptance of offers to compromise, [and] Rule 408(a)(2) covers any statement made during compromise negotiations." *United States v. Dish Network, L.L.C.*, No. 09-2073, 2015 WL 9164665, at *3 (C.D. Ill. signed December 15, 2015).[16] It has been noted that "Rule 408 statements made in settlement negotiations are only excludable under the circumstances protected by the rule." 1 Palmer, *et al.*, *Handbook on Evidence* § 408.02, at 479. The exceptions to the prohibitions of Rule 408(a) are found in Rule 408(b). This rule provides as follows:

> (b) *Exceptions* – This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness,

---

[15]It will be noted that "[t]he general prohibition under Rule 408(a) extends not just to settlement negotiations between the same parties in a suit, but also to the same parties in an action growing out of a previously settled suit." 1 Palmer, *et al.*, *Handbook on Evidence* § 408.03 at 483.

[16]Rule 408(a) provides in full:

> (a) *Prohibited uses* – Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim, the liability of a party in a disputed claim, or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or a statement made during compromise negotiations about the claim.

negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

It has been recognized that "[t]his is an illustrative, not an exhaustive, list of the many exceptions to the Rule 408 prohibition." *United States v. J.R. LaPointe & Sons, Inc.*, 950 F. Supp. 21, 23 (D. Me. 1996). In Syllabus point 7 of *State ex rel. Shelton v. Burnside*, 212 W. Va. 514, 575 S.E.2d 124 (2002), we held "[t]he decision of whether to admit evidence of compromise offers [or settlements] for a purpose other than to 'prove liability for or invalidity of the claim or its amount,' W. Va. R. Evid. 408, is within the sound discretion of the circuit court."

According to the Petitioners, Mr. Allman's "testimony concerning the counterclaim was offered to establish that Officer Miller had a motive to lie to the jury concerning the accident to benefit financially by suing Allman." Consequently, evidence by the Petitioners of the settlement was only for the purpose of showing that Petitioner "Miller had no incentive to lie as the counterclaim had already been settled by the parties[.]" The Petitioners have not cited to any authority to support this circuitous reasoning for admitting evidence of the settlement. Whether or not Petitioner Miller had a motive to lie or tell the truth did not end with the counterclaim settlement. Petitioner Miller's position in his counterclaim was the same as that asserted in Mr. Allman's suit: he alleged innocence of wrongdoing in both actions. We find the trial court did not commit error in prohibiting the Petitioners from cross-examining Mr. Allman about the settlement agreement.

26

### D. Closing Argument

The Petitioners next contend that during closing argument counsel for Mr. Allman made a "golden rule" argument in violation of a pretrial ruling by the circuit court. Mr. Allman contends that no such argument was made, and that the issue is waived because the Petitioners failed to object to the closing remarks during the trial.

We have long held that "[t]he discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Syl. pt. 3, *State v. Boggs*, 103 W. Va. 641, 138 S.E. 321 (1927). This Court has also recognized that "[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syl. pt. 6, *Yuncke v. Welker*, 128 W. Va. 299, 36 S.E.2d 410 (1945). *See also State v. Coulter*, 169 W. Va. 526, 530, 288 S.E.2d 819, 821 (1982) ("In order to take advantage of remarks made during an opening statement or closing argument which are considered improper an objection must be made and counsel must request the court to instruct the jury to disregard them.").

27

The closing argument remarks made by counsel for Mr. Allman, for which the Petitioners complain, were as follows:

> And I'll submit to you, let's say, as I said in the opening, let's say there was an ad in the paper and it said, "Okay. You can get rear-ended by a police officer, and you'll be in a bad mood for the next several years, and then have a short fuse for the rest of your life. What amount, Kevin, do you think is fair? Would you volunteer to step up for it?" And that's the amount. The amount between a willing buyer and a willing seller. That's what would be fair. So whatever's fair for him.

The Petitioners contend that these remarks constitute a golden rule argument, and that the trial court granted its pretrial motion to preclude such an argument from being made to the jury. This Court has recognized that "[t]he so-called 'golden rule argument' to a jury has been widely condemned as improper." *Ellison v. Wood & Bush Co.*, 153 W. Va. 506, 514, 170 S.E.2d 321, 327 (1969). The golden rule argument has been summarized as follows:

> essentially a suggestion to the jury by an attorney that the jurors should do unto others, normally the attorney's client, as they would have others do unto them. The typical situation in which such an argument has been employed is the personal injury case in which the plaintiff's counsel suggests to the jurors that they grant the plaintiff the same amount of damages they would want or expect if they were in the plaintiff's shoes. The courts have generally found the "Golden Rule" argument improper because a jury which has put itself in the shoes of one of the parties is no longer an impartial jury.

*Minato v. Scenic Airlines, Inc.*, No. 85-2767, 908 F.2d 977 (unpublished table decision), 1990 WL 98855, at *5 (9th Cir. July 13, 1990) (quotations and citation omitted). *See also* Syl. pt. 4, *State v. Clements*, 175 W. Va. 463, 334 S.E.2d 600 (1985) ("Only an argument that

urges the jurors to put themselves in the place of the victim or the victim's family is an improper 'golden rule' argument.").

The record is clear in showing that the Petitioners did not object to the purported golden rule remark when it was made to the jury. The Petitioners contend that, under this Court's holding in *Lacy v. CSX Transp. Inc.*, 205 W. Va. 630, 520 S.E.2d 418 (1999), they did not have to object at trial. This Court held the following in Syllabus point 3 of *Lacy*:

> To preserve error with respect to closing arguments by an opponent, a party need not contemporaneously object where the party previously objected to the trial court's in limine ruling permitting such argument, and the argument pursued by the opponent reasonably falls within the scope afforded by the court's ruling.

*Id.* This holding in *Lacy* does not help the Petitioners for two reasons. First, the only party that could take advantage of the *Lacy* exception to an objection is the party who opposed a motion in limine ruling. The Petitioners did not oppose the motion in limine ruling, they made the motion in limine and it was granted. Second, and we so hold, Syllabus point 3 of *Lacy v. CSX Transp. Inc.*, 205 W. Va. 630, 520 S.E.2d 418 (1999), has been superseded by Rule 103(b) of the West Virginia Rules of Evidence.

Rule 103(b) states that "[o]nce the court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim

29

of error for appeal."[17]  It has been noted that Rule 103(b) "applies to all rulings on evidence whether they occur at or before trial, including so-called 'in limine' rulings."  1 Palmer, *et al.*, *Handbook on Evidence* § 103.04, at 106.  The issue of first impression for this Court is whether Rule 103(b)'s exception to making an objection applies to a party who obtained a favorable definitive motion limine ruling.  To help resolve this issue, we look to federal courts because Rule 103(b) was patterned after federal Rule 103(b).  *See Aluise v. Nationwide Mut. Fire Ins. Co.*, 218 W. Va. 498, 504, 625 S.E.2d 260, 266 (2005) ("Our Rule 56 is patterned after Rule 56 of the Federal Rules of Civil Procedure.  Therefore, we look to Federal law for guidance."); *State ex rel. Paige v. Canady*, 197 W. Va. 154, 160, 475 S.E.2d 154, 160 (1996) ("Because the language contained in Rule 26(c) of the West Virginia Rules of Civil Procedure is nearly identical to Rule 26(c) as contained in the Federal Rules of Civil Procedure, we look to federal case law for guidance.").

Federal Rule 103(b) is identical to our state rule.  The federal rule provides that "[o]nce the court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  This provision was added to the federal rule in 2000.  In a comment on the limitations of Rule 103(b), the federal Advisory Committee Note to Rule 103(b) states that "if the opposing party violates

[17]We have recognized that "[t]he substance of Rule 103(b) is new and was added in 2014."  *West Virginia Dep't of Transp., Div. of Highways v. Newton*, 235 W. Va. 267, 273 n.10, 773 S.E.2d 371, 377 n.10 (2015).

the terms of the initial ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal." *See* 1 Palmer, *et al.*, *Handbook on Evidence* § 103.04, at 105 ("Rule 103(b) applies to preserving claims of error as to an adverse ruling, not claims of error that relate to a ruling in a party's favor."); 21 Charles A. Wright & Kenneth W. Graham, *Federal Practice & Procedure* § 5037.16, at 805 (2d ed. 2005) ("[A]n objection must be made when another party violates the motion in limine."). The reason for this is that, "[t]o hold otherwise would adopt a rule that violates principles of judicial economy by permit[ting] counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose." *Bayerische Motoren Werke Aktiengesellschaft v. Roth*, 127 Nev. 122, 140, 252 P.3d 649, 661 (2011) (internal quotations and citation omitted).

A case that applied the limitation of Rule 103(b), that is set out in the Advisory Committee Note, was *United States v. Fonseca*, 744 F.3d 674 (10th Cir. 2014). In *Fonseca* the defendant was convicted of possessing stolen firearms. Prior to trial, the district court granted the defendant's motion in limine to preclude the government from introducing evidence that he had previously sold several guns that were stolen. The government introduced such evidence during the trial in violation of the motion in limine ruling. On appeal, the defendant argued that it was error for the government to violate the pretrial ruling.

The Tenth Circuit found that the issue was not preserved because the defendant did not

object at trial when the violation of the order occurred:

> If Defendant had raised a contemporaneous objection to the government's evidence of gun sales in this case, he would not have been futilely re-raising an objection that had already been rejected. Rather, he would have been putting the district court on notice of his current argument that the government was violating the court's earlier evidentiary ruling by eliciting testimony that fell within the scope of this ruling. . . . Our conclusion . . . is supported by the Advisory Committee Note on the 2000 amendment to Rule 103 of the Federal Rules of Evidence, which states:
>
>> Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered. **If the court changes its initial ruling, or if the opposing party violates the terms of the initial ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal.** The error, if any, in such a situation occurs only when the evidence is offered and admitted. . . .
>
> We accordingly reject the contention that the district court's unequivocal ruling in Defendant's favor preserved for review his current argument that this ruling was subsequently violated. Rather, we hold that Defendant was required to raise a contemporaneous objection at the time the alleged error occurred – when the government introduced evidence that allegedly should have been excluded pursuant to the district court's pretrial ruling. . . .

*Fonseca*, 744 F.3d at 683-684 (footnote & citations omitted). *See also ML Healthcare*

*Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1305 (11th Cir. 2018) (quoting and

applying committee note); *United States v. Alaboudi*, 786 F.3d 1136, 1141 n.3 (8th Cir. 2015) (same); *United States v. Curanovic*, 490 F. App'x 403, 404 (2d Cir. 2013) (same).

In view of the foregoing authorities, we hold that Rule 103(b) of the West Virginia Rules of Evidence provides that when a "court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal." This provision applies to preserving a claim of error by the party who opposed the ruling, not a claim of error by the party who prevailed on the ruling. Thus, a party who obtained a favorable definitive ruling on an issue must timely object if the opposing party violates the ruling.

Assuming, without deciding, that the closing remark by Mr. Allman's counsel was a golden rule argument that was prohibited by the trial court's in limine ruling, the Petitioners did not preserve the issue for appellate review by timely objecting at trial to the argument.

### E. General and Special Damages

The final issue raised by the Petitioners concerns the jury's award of damages. The Petitioners argue that the general damages awarded were excessive, and that there was

insufficient evidence to support the award of special damages for lost wages. We will address these issues separately below.

**1. General damage award**. The Petitioners contend that they are entitled to remittitur or a new trial on general damages because the jury verdict was excessive. The record indicates that the jury awarded Mr. Allman $200,000.00 as general damages. The Petitioners contend that this award was monstrous, unreasonable, and indicative of jury passion. Mr. Allman argues that the general damage award was reasonable in light of the injuries he sustained.

We have long held that "[c]ourts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption." Syllabus, *Addair v. Majestic Petroleum Co.*, 160 W. Va. 105, 232 S.E.2d 821 (1977). In determining whether there is sufficient evidence to support a jury verdict, we:

> (1) consider the evidence most favorable to the prevailing party;
> (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. pt. 5, in part, *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d 593 (1983). We have noted:

34

There is and there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to the establishment of damage awards for personal injuries. And it is equally plain that there is no measure by which the amount of pain and suffering endured by a particular human can be calculated. No market place exists at which such malaise is bought and sold. A person can sell quantities of his blood, but there is no mart where the price of a voluntary subjection of oneself to pain and suffering is or can be fixed. . . .

*Crum v. Ward*, 146 W. Va. 421, 429, 122 S.E.2d 18, 23-24 (1961) (quotations and citation omitted). Accordingly,

A jury verdict . . . may not be set aside as excessive by the trial court merely because the award of damages is greater than the trial judge would have made if he had been charged with the responsibility of determining the proper amount of the award. This Court cannot set aside a verdict as excessive . . . merely because a majority or all members of the Court would have made an award of a lesser amount if initially charged with the responsibility of determining the proper amount of the award.

*Sargent v. Malcomb*, 150 W. Va. 393, 401, 146 S.E.2d 561, 566 (1966). Finally, "[b]ecause the verdict below is entitled to considerable deference, an appellate court should decline to disturb a trial court's award of damages on appeal as long as that award is supported by some competent, credible evidence going to all essential elements of the award." Syl. pt. 4, in part, *Reed v. Wimmer*, 195 W. Va. 199, 465 S.E.2d 199 (1995).

Upon a review of the proceedings below, we cannot find that the general damages awarded by the jury was either unsupported by the evidence or improperly based

upon the jury's passion and prejudice. Although the verdict form used by the jury was not made part of the record on appeal, the trial court's judgment order reflected the following as considerations by the jury in awarding general damages:

> Other harms and losses including, but not limited to, past, present, and future inconvenience, annoyance, physical pain, physical harm, inability to engage in pursuits that he enjoyed prior to the crash, humiliation, limitations on his daily activities, and reduction in his ability to enjoy life.

The record provides evidence to support the award of general damages for each of the considerations set out in the trial court's judgment order.

To start, the jury awarded Mr. Allman $9,387.50 for medical expenses. The testimony of Mr. Allman's treating physician, Dr. Jason Barton, was presented via a videotaped deposition. Dr. Barton testified that he was Mr. Allman's physician for about eight to ten years. Dr. Barton indicated that, as a result of the collision, Mr. Allman "was diagnosed with post-concussion syndrome and some other musculoskeletal injuries." The effects of the post-concussion syndrome included dizziness, headaches, emotional ability, anxiety, and irritability. Dr. Barton also testified that Mr. Allman underwent physical therapy and behavioral therapy with a psychologist.[18] The Petitioners did not present any medical evidence to challenge Dr. Barton's testimony. Mr. Allman's wife testified that, after the

---

[18]Dr. Barton indicated that the behavioral therapy was eventually terminated because of "financial reasons."

36

collision, he exhibited mood swings, anger outbursts, anxiety about driving, and memory problems. The Petitioners did not cross-examine Mr. Allman's wife. Mr. Allman also testified about the issues of which Dr. Barton and his wife informed the jury.

The essence of the Petitioners' argument is that Mr. "Allman's injuries are simply not of the serious nature to support the substantial general damage verdict." We have upheld similar verdicts. *See Adkins v. Foster*, 187 W. Va. 730, 421 S.E.2d 271 (1992) (finding jury award of $222,133.00 not excessive where medical bills amounted to $2,768.00); *Torrence v. Kusminsky*, 185 W. Va. 734, 408 S.E.2d 684 (1991) (concluding jury award of $207,000.00 was not excessive where medical bills totaled $8,000.00). Further, we have held that "[d]amages may be recovered for substantial injuries, and the resulting pain and suffering, if any, even though the injuries are not of a permanent nature." Syl. pt. 1, *Keiffer v. Queen*, 155 W. Va. 868, 189 S.E.2d 842 (1972). We find no merit to the Petitioners' challenge of the general damage award. The evidence in this case supports the jury award.

**2. Special damages for lost wages**. The final issue raised by the Petitioners involves the jury award of $4,500.00 for lost wages. The Petitioners contend that the evidence was insufficient to support the award. Mr. Allman argues that he testified as to the

amount of his lost wages and that the Petitioners failed to put on any evidence to rebut his testimony.

We have held that "[a]n appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence." Syl. pt. 2, *Stephens v. Bartlett*, 118 W. Va. 421, 191 S.E. 550 (1937). *Accord Moore v. St. Joseph's Hosp. of Buckhannon, Inc.*, 208 W. Va. 123, 125, 538 S.E.2d 714, 716 (2000). In Syllabus point 2 of *Denoff v. Fama*, 102 W. Va. 494, 135 S.E. 578 (1926), we held that "[a] verdict of a jury should not be set aside on the ground of insufficient evidence, where the sufficiency depends upon the credibility of witnesses and the reasonable inferences which may be drawn from the evidence." Finally, "[t]he general rule with regard to proof of damages is that such proof cannot be sustained by mere speculation or conjecture." Syl. pt. 1, *Spencer v. Steinbrecher*, 152 W. Va. 490, 164 S.E.2d 710 (1968).

In the instant proceeding, the record is clear in showing that the only evidence of lost wages was the testimony of Mr. Allman. Mr. Allman indicated in that testimony that he "figured up" his lost wages and that it came to "about 4500 bucks." No other evidence was introduced on the issue. A number of courts around the country that have addressed the issue have held, and we so hold, that "[a] plaintiff's testimony alone is sufficient to prove lost

wages as long as the testimony ... reasonably establishes the claim." *Guidry v. Bernard*, 155 So. 3d 162, 169 (La. Ct. App. 2014) (internal quotations and citation omitted). *See also Roland v. Krazy Glue, Inc.*, 342 So. 2d 383, 385 (Ala. Civ. App. 1977) ("Without any evidence that plaintiff's wages were paid, we find she sufficiently showed a loss of wages as the result of her injury. It is undisputed that she lost $254.50 in wages for the time she was absent from work."); *Carrano v. Yale-New Haven Hosp.*, 279 Conn. 622, 646-47, 904 A.2d 149, 167 (2006) ("Thus, if a plaintiff presents testimonial evidence with respect to damages, it is solely within the province of the jury to assess the credibility of the plaintiff and to weigh the value of his or her testimony."); *Seaboard Sys. R.R. v. Taylor*, 176 Ga. App. 847, 850, 338 S.E.2d 23, 27 (1985) ("The plaintiff's testimony regarding the amount of wages she had lost as the result of the injury was sufficient to enable the jurors to calculate the amount of this alleged loss with reasonable certainty."); *Davis v. Bowman*, 346 So. 2d 225, 227 (La. Ct. App. 1977) ("Davis is entitled to recover an amount for lost wages. He testified that he missed work for three days and earned $24.00 a day. A claim for lost wages may be proven by plaintiff's own reasonable testimony, if accepted as truthful, although it is better to introduce corroborating testimony."); *State v. McLain*, 238 Neb. 225, 229, 469 N.W.2d 539, 541 (1991) ("[W]hen a plaintiff suffers personal injury, his or her testimony regarding his or her hourly base pay and average weekly wages is sufficient proof to permit the jury to award damages for the plaintiff's lost earnings."); *Frye v. Kanner*, No. 2364, 27 Phila. Co. Rptr. 170, 187, 1993 WL 1156104, at * ___ (Pa. Com. Pl. Sept. 22, 1993) ("[A] plaintiff's

testimony regarding his or her job, the number of hours worked, and wages is sufficient to allow a claim for lost wages to go to the jury."); *Fletcher v. Bickford*, No. E2000-01020-COA-R3-CV, 2001 WL 12224, at *9 (Tenn. Ct. App. Jan. 5, 2001) ("Plaintiff testified that as a result of the accident, he missed 400 hours of work. . . . He also testified that his annual salary at the time of the accident was $55,000. Plaintiff's counsel then calculated that a $55,000 salary equated to about $28 per hour, multiplied that by the 400 hours time lost and argued to the jury that Plaintiff had lost wages in that amount. The Trial Court found this to be a reasonable argument and gave an appropriate jury instruction on lost wages based on this proof presented to the jury of Plaintiff's annual salary of $55,000 and 400 hours time lost. The Trial Court found no fault with this argument, and neither do we. We find this issue to be without merit."); *Hyde-Way, Inc. v. Davis*, No. 2-08-313-CV, 2009 WL 2462438, at *10 (Tex. App. Aug. 13, 2009) ("Davis testified that his dental treatment caused him to take ten days' vacation from work, which cost him 'a little over $3,000.' The jury awarded him $3,100; Davis's testimony provides more than a scintilla of evidence to support this award.").

Although the evidence of lost wages in this case was based on the testimony of Mr. Allman, it was the only evidence and it was never challenged. The Petitioners failed to cross-examine Mr. Allman on the issue of lost wages, and failed to present any independent evidence on the issue. But more importantly, there is nothing in the record to

show that the Petitioners asked the trial court not to give an instruction on lost wages because of insufficiency of evidence.[19]  Although the verdict form was not made part of the record on appeal, Mr. Allman has indicated that the Petitioners did not object to a lost wage option being placed on the verdict form.[20]  Simply put, the Petitioners "never questioned or contested the special damages introduced by the plaintiff during the trial." *Hagley v. Short*, 190 W. Va. 672, 673, 441 S.E.2d 393, 394 (1994).

In view of the record in this case, we find no error in the jury's verdict on lost wages.

---

[19]The trial court instructed the jury as follows:

If proven to your satisfaction, by a preponderance of the evidence, you may include damages, in the following categories:

Kevin Allman's medical cost;

Kevin Allman's lost earnings;

. . . .

You may award plaintiff Kevin Allman his earnings and related benefits which you find by a preponderance of the evidence were lost as a proximate result of the Defendants' conduct.

[20]The trial court's judgment order included the following:

What is the total amount of fair compensation to which Kevin Allman is entitled for wages and benefits that he lost as a result of his injury?  $4,500.00

## IV.

## CONCLUSION

In view of the foregoing, we affirm the trial court's denial of the Petitioners' post-trial motion for new trial and remittitur.

Affirmed.